

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLST HOLDINGS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | |
| RED OAK FUND, LP, RED OAK | § | **3 - 0 9 C V 0 2 9 1 - P** |
| PARTNERS, LLC, and DAVID | § | |
| SANDBERG, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT
## AND APPLICATION FOR INJUNCTIVE RELIEF

COMES NOW, Plaintiff CLST Holdings, Inc. ("CLST") and files this its Original Complaint and Application for Injunctive Relief, complaining of Defendants Red Oak Fund, LP, Red Oak Partners, LLC, and David Sandberg (collectively "Red Oak"), and in support thereof would respectfully show the Court as follows:

### PARTIES

1.     CLST is a Delaware corporation.  Shares of CLST's common stock are traded on the pink sheets.

2.     Red Oak Fund, LP is a Delaware Corporation with registered agent, Blumbergexcelsior Corporate Services, Inc. 1220 N. Market Street, Suite 806, Wilmington Delaware 19801.

3.     Red Oak Partners, LLC is a New York limited liability company with DOS process at Attn. David Sandberg, 145 4th Avenue, Apt. 15A, New York, New York, 10003.

**PLAINTIFFS' ORIGINAL COMPLAINT**
**AND APPLICATION FOR INJUNCTIVE RELIEF   - Page 1**

4.      David Sandberg is an individual and a citizen of the State of New York and can be served with process at 145 4th Avenue, Apt. 15A, New York, New York, 10003.  He is a portfolio analyst with Red Oak Partners, LLC.

## JURISDICTION AND VENUE

5.      This action arises under Sections 13(d)and 14(d) of the Securities Exchange Act of 1934, as amended (the "'34 Act"), 15 U.S.C. §§ 78m and 78n, and the rules and regulations promulgated thereunder by the SEC.

6.      Jurisdiction over the subject matter of this action is based upon 28 U.S.C. § 1331 and 15 U.S.C. § 78aa.

7.      Venue in this district is proper pursuant to 15 U.S.C. §78aa and 28 U.S.C. §1391(b)(2).

8.      Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 because an actual controversy exists regarding Red Oak's compliance with Rule 14e-5(a), Rule 14d-5(f), Rule 14(d)(1), and Section 13(d) of the '34 Act.

## FACTUAL BACKGROUND

9.      On or about January 30, 2009, Red Oak Partners, LLC, through its agent David Sandberg, contacted CLST about making a tender offer for CLST's common stock.  Pursuant to Rule 14d-5(a), Red Oak Partners, LLC requested that CLST either disseminate its tender offer or provide it with a stockholder list and security position listings.   CLST received this correspondence on February 2, 2009.   In this correspondence, Red Oak acknowledged its obligations under 14d-5(f) of the Exchange Act with respect to the requested stockholder list.  A true and correct copy of this correspondence is attached hereto as Exhibit A.

10.     In accordance with Rule 14d-5(a)'s requirements, CLST made an election about whether to disseminate Red Oak Partners, LLC's tender offer or to provide Red Oak Partners, LLC with its shareholder list. CLST elected to comply with 14d-5(a) by providing Red Oak with its stockholder list and security position statement. CLST provided that information to Red Oak on February 6, 2009. At or near that time, Red Oak informed CLST that it owned 4.7 percent of CLST's outstanding shares.

11.     On February 3, 2009, at 2:25 P.M., Red Oak issued a press release announcing its intention to make a tender offer. In that press release, Red Oak announced its plan to commence a tender offer for up to 70% of the outstanding shares of CLST, at an offer price of $0.25 per share. A true and correct copy of this press release is attached hereto as Exhibit B.

12.     On February 3, 2009, 1,089,500 shares of CLST were traded. Upon information and belief, those shares are held by Red Oak and/or its agents or affiliates.

13.     On February 4, 2009, CLST publicly announced that Red Oak Fund, L.P., managed by Red Oak Partners, LLC, had expressed its intent to commence a tender offer for up to 70% of the outstanding shares of common stock of CLST at $0.25 per share. CLST stated that its board of directors was reviewing and considering the tender offer, and that it would make recommendations at a later date. A true and correct copy of this press release is attached hereto as Exhibit C.

14.     In light of Red Oak's proposed tender offer and the unusual trading volume in its stock, and in an attempt to protect stockholder value, CLST adopted a rights plan and declared a dividend of one preferred share purchase right for each outstanding share of common stock of the company on February 5, 2009. The dividend is payable to stockholders of record as of February 16, 2009. All terms of the rights and the rights plan are to be set forth in a Rights

Agreement, by and between CLST and Mellon Investor Services, LLC (the "Rights Plan"). CLST announced the adoption of the Rights Plan on that same date. A true and correct copy of this press release is attached hereto as Exhibit D.

15.     On February 6, 2009, an uncharacteristically large volume of CLST shares was traded, 401,000, at $0.22. Upon information and belief, Red Oak and/or its agents or affiliates purchased those shares.

15.     On February 9, 2009, Red Oak Fund, LP, a fund managed by Red Oak Partners, LLC, announced that it was terminating its previously announced plan to commence a tender offer for shares of CLST's common stock in light of CLST's announcement that it had adopted a "poison pill" rights plan. A true and correct copy of this press release is attached hereto as Exhibit E.

17.     Upon information and belief, Red Oak had no intention of abandoning its plan to acquire large quantities of CLST shares and its actions have been wholly inconsistent with that announcement.

18.     On February 9, 2009, 2,590,500 CLST shares were traded, in multiple trades, all at $0.23. That amount represents approximately 12% of CLST's outstanding shares. Upon information and belief, Red Oak and/or its agents or affiliates purchased those shares.

19.     The abnormal trading activity continued to occur, and on February 12, 2009 at 12:09 P.M., 755,800 shares were traded at $0.24 per share. Minutes later, at 12:20 pm, another 761,200 shares were traded at $0.26 per shares. Upon information and belief, Red Oak and/or its agents or affiliates purchased those shares.

20.    A CLST shareholder has contacted CLST and informed it that Red Oak has been aggressively offering to purchase CLST stock from him.   A true and correct copy of this correspondence is attached hereto as Exhibit F.

## COUNT 1

### (Violations of Rule 14(e)-5)

21.    CLST repeats the allegations of preceding paragraphs 1-20 as if fully set forth herein.

22.    Rule 14(e)-5(a) provides, in relevant part that: "As a means reasonably designed to prevent fraudulent, deceptive or manipulative acts or practices in connection with a tender offer for equity securities, no covered person may directly or indirectly purchase or arrange to purchase any subject securities or any related securities except as part of the tender offer.  This prohibition applies from the time of public announcement of the tender offer until the tender offer expires."

23.    Red   Oak's   February   4,   2009   announcement   triggered   Rule   14(e)-5's requirements, as that public announcement was a written communication by the offeror, reasonably designed to, or having the effect of, informing the public or security holders in general about the tender offer.

24.    Although Red Oak purported to "abandon" its tender offer, its actions subsequent to the purported termination are inconsistent with that stated intention, and actually evidence Red Oak's desire to continue to accumulate CLST shares without the restrictions imposed under Rule14(e)-5.

25.    Upon information and belief, Red Oak violated Rule 14(e)-5 by directly or indirectly purchasing or arranging to purchase CLST shares not in connection with its tender

offer and without complying with the procedural, disclosure, and anti-fraud requirements applicable to tender offers regulated under Section 14(d).

26.     CLST and the investing public will be irreparably harmed in the absence of the declaratory and equitable relief as prayed for herein.

## COUNT 2

### (Violations of Rule 14d-5(f))

27.     CLST repeats the allegations of preceding paragraphs 1-26 as if fully set forth herein.

28.     Rule 14d-5(f) addresses the dissemination of certain tender offers by the use of stockholder lists and security position listing.  The Rule requires a subject company either to mail a bidder's tender offer materials to its shareholders or to provide that bidder with a shareholder list so that it may send the tender offer materials itself.

29.     If a subject company has decided to provide the bidder with a shareholder list, 14d-5(f) requires that the bidder use the shareholder list exclusively in the dissemination of tender offer materials to security holders in connection with the bidder's tender offer.  Rule 14d-5(f) also requires the bidder to return the shareholder list promptly after the termination of the bidder's tender offer.  Rule 14d-5(f) requires the bidder to accept, handle, and return the shareholder lost on a confidential basis, and prevents a bidder from retaining the shareholder list, or any information derived from such list, after the termination of the bidder's tender offer.

30.     Despite its February 9, 2009 announcement that it was "abandoning" its plans to commence a tender offer, Red Oak has failed to return to CLST its stockholder list or security position listing.

31.     Further, as CLST has learned from certain shareholders, Red Oak is contacting those shareholders and attempting to purchase their shares.  Upon information and belief, Red Oak is using CLST's stockholder list to contact those shareholders.

32.     Upon information and belief, Red Oak violated Rule 14d-5(f) by using CLST's stockholder list for a purpose other than in connection with the dissemination of tender offer materials in connection with the bidder's tender offer, by failing to return the stockholder list to CLST after "abandoning" its tender offer, and by failing to accept, handle, or return the stockholder list to CLST on a confidential basis.

33.     CLST and the investing public will be irreparably harmed in the absence of the declaratory and equitable relief as prayed for herein.

## COUNT 3

### (Violations of Rule 14(d)-10)

34.     CLST repeats the allegations of preceding paragraphs 1-33 as if fully set forth herein.

35.     Section 14(d)(7) of the '34 Act provides:  "Where any person varies the terms of a tender offer or request or invitation for tenders before the expiration thereof by increasing the consideration offered to holders of such securities, such person shall pay the increased consideration to each security holder whose securities are taken up and paid for pursuant to the tender offer or request or invitation for tenders whether or not such securities have been taken up by such person before the variation of the tender offer or request or invitation."  In the same vein, Rule 14(d)-10 addresses equal treatment of security holders.  Specifically, it provides that no bidder shall make a tender offer "unless the tender offer is open to all security holders of the class of securities subject to the tender offer"; and "the consideration paid to any security holder

for securities tendered in the tender offer is the highest consideration paid to any other security holder for securities tendered in the tender offer."

36.    Upon information and belief, Red Oak has violated the "all holders/best price rule" by purchasing shares pursuant to its tender offer at differing prices.

37.    CLST and the investing public will be irreparably harmed in the absence of the declaratory and equitable relief as prayed for herein.

<u>COUNT 4</u>

**(Violations of 13(d) of the '34 Act)**

38.    CLST repeats the allegations of preceding paragraphs 1-37 as if fully set forth herein.

39.    Section 13(d)(1) of the '34 Exchange Act is a reporting provision that requires any person who accumulates more than 5% of the stock of a publicly held company to disclose certain information to the issuer of the stock, the exchanges on which the stock is traded, and the SEC.

40.    Under Section 13(d)(1), the information that the filer must disclose includes (1) the background and identity of the person who acquired the shares and all other persons by whom or on whose behalf the purchases have been or are to be effected; (2) the source and amount of the funds used or to be used in making the purchases; (3) if the purpose of the purchases it to acquire control of the business, any plans or proposals to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in the business or corporate structure; (4) the number of shares owned and the number of shares the person has a right to acquire, directly or indirectly, including those by each associate of such person, giving the background, identity, residence, and citizenship of each associate, and (5)

information as to any contracts, arrangements, or understandings that have been entered into, and the details thereof.  That information is all to be included on a Schedule 13D.

41.    Upon information and belief, Red Oak has accumulated more than 5% of CLST's stock, and is believed to have exceeded that percentage on or about February February 6, 2009. Because Red Oak's acquisition is connected to a tender offer and a hostile takeover, Red Oak did not have ten days to file its Schedule 13D, but instead had only three days.

42.    Upon information and belief, despite accumulating more than 5% of CLST's stock, Red Oak failed to timely disclose this information, and all of the other required information, in a Schedule 13D.

43.    CLST and the investing public will be irreparably harmed in the absence of the declaratory and equitable relief as prayed for herein.

## REQUEST FOR PRELIMINARY INJUNCTION

44.    CLST repeats the allegations of preceding paragraphs 1-44 as if fully set forth herein.

45.    CLST and its shareholder will suffer irreparable injury if Red Oak is not enjoined while this suit is pending from violating Rule 14(e)-5 by continuing to purchase, either directly or indirectly through its agents and affiliates, CLST shares without complying with the procedural, disclosure, and anti-fraud provisions of the law applicable to tender offers.  CLST will also suffer irreparable injury if Red Oak is not enjoined from violating Rule 14d-5(d)(4) by retaining CLST's stockholder list and using that list to contact CLST's shareholders.  CLST's injury is imminent because abnormal trading activity is currently occurring, and CLST's Rights Plan becomes effective on Monday, February 16, 2009.  CLST's injury is irreparable because CLST stands to lose corporate control that could not be restored, and because CLST's

confidential shareholder lists are currently being used for purposes not within the scope of Rule 14d-5(d)(4).

46.    There is no adequate remedy at law because control of the corporation is at issue and Red Oak and/or its affiliates is attempting to obtain control by unlawful means.

47.    There is a substantial likelihood of success on the merits because CLST will be able to prove that Red Oak and/or its affiliates have continued to engage in a hostile tender offer in a manner that violates the federal securities laws.

48.    The harm faced by CLST outweighs the harm that would be sustained by Red Oak if the preliminary injunction were granted in that CLST stands to lose corporate control which it currently enjoys, and Red Oak and/or its affiliates are acting in violation of the federal securities laws.  Because of the procedural requirements of Section 14(d)(1), Red Oak would already be precluded from the acts sought to be enjoined.

49.    Issuance of a preliminary injunction would not adversely affect the public interest because CLST seeks to enforce the very securities laws enacted to protect the investing public.

50.    CLST is willing to post a bond in the amount the court deems appropriate.

51.    CLST asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against Red Oak.

## REQUEST FOR PERMANENT INJUNCTION

52.    CLST asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Red Oak.

## PRAYER FOR RELIEF

WHEREFORE, CLST prays for relief in the form of an order:

(a)     Declaring that Red Oak failed to comply with Rule 14(e)-5(a), Rule 14d-5(f), Rule 14(d)(1) and Section 13(d) of the '34 Act.

(b)     Enjoining Red Oak from violating Rule 14(e)-5 by continuing to purchase, either directly or indirectly through its agents and affiliates, CLST shares.  CLST also seeks to enjoin Red Oak;

(d)     Enjoining Red Oak from violating Rule 14d-5(f) by retaining CLST's stockholder list and using that list to contact CLST's shareholders;

(e)     Prohibiting Red Oak from further violating Section 13(d) of the '34 Act; and

(e)     Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone:     (214) 953-6000
Facsimile:     (214) 953-5822

By: _____
Mark T. Josephs
State Bar No. 11031400
Sara K. Hollan
State Bar No. 24046091

**ATTORNEYS FOR CLST HOLDINGS, INC.**

# RED OAK PARTNERS, LLC

145 4th Avenue, Suite 15A | New York, New York 10003
Telephone (212) 614-8952 | Facsimile (646) 390-6784

January 30, 2009

214 661-6697

CLST Holdings, Inc.
17304 Preston Road, Suite 420
Dallas, Texas 75252
Attention: Robert A. Kaiser

Dear Mr. Kaiser:

Red Oak Partners, LLC ("Red Oak") hereby makes a request to CLST Holdings, Inc. (the "Company") pursuant to Section 14d-5(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), for the use of the Company's stockholder list and security position listings for the purpose of disseminating a tender offer to the holders of the Company's common stock, par value $0.01.

Red Oak is aware of and will comply with the provisions of Section 14d-5(f) under the Exchange Act. Red Oak has elected pursuant to Section 14d-5(f)(1) under the Exchange Act to require the Company to disseminate amendments disclosing material changes to the tender offer materials pursuant to Section 14d-5.

Please contact me at (212) 614-8592 and at the address below with the notification required under Section 14d-5(a)(4) or any questions regarding this request:

Red Oak Capital Partners, LLC
145 Fourth Avenue, Suite 15A
New York, NY 10003

Best regards,

David Sandberg
Portfolio Manager

EXHIBIT
A

```
<DOCUMENT>
<TYPE>SC TO-C
<SEQUENCE>1
<FILENAME>clhischeduleto20090203.txt
<TEXT>
UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

SCHEDULE TO
(Rule 14d-100)
Tender Offer Statement Under Section 14(d)(1) or 13(e)(1)
of the Securities Exchange Act of 1934

CLST Holdings, Inc.
(Name of Subject Company (Issuer))

Red Oak Fund, L.P.
(Name of Filing Person (Offeror))

Common Stock, $.01 par value
(Title of Class of Securities)

150925204
(CUSIP Number of Class of Securities)

David Sandberg
Red Oak Capital Partners, LLC
145 Fourth Avenue, Suite 15A
New York, NY  10003
(212) 614-8952

(Name, address and telephone number of person authorized to receive notices
and communications on behalf of filing person)


CALCULATION OF FILING FEE

Transaction Valuation*
N/A

Amount of Filing Fee**
N/A

* Estimated for purposes of calculating the filing fee only.
** The amount of the filing fee, calculated in accordance with Rule 0-11 under
the Securities Exchange Act of 1934, as amended.

_ Check the box if any part of the fee is offset as provided by Rule 0-11(a)(2)
and identify the filing with which the offsetting fee was previously paid.
Identify the previous filing by registration statement number, or the Form or
Schedule and the date of its filing.

Amount Previously Paid: N/A

Filing Party: N/A

Form or Registration No.: N/A

Date Filed: N/A
```



EXHIBIT
B



X Check the box if the filing relates solely to preliminary communications made
  before the commencement of a tender offer.
Check the appropriate boxes below to designate any transactions to which the
statement relates:
_ third-party tender offer subject to Rule 14d-1.
_ issuer tender offer subject to Rule 13e-4.
_ going-private transaction subject to Rule 13e-3.
_ amendment to Schedule 13D under Rule 13d-2.

Check the following box if the filing is a final amendment reporting the results
of the tender offer:  _


FOR IMMEDIATE RELEASE

For further information contact David Sandberg, Red Oak Partners, LLC
(212) 614-8952,dsandberg@redoakpartners.com

Red Oak Announces Its Plan to Make a Tender Offer for Shares of CLST Holdings,
Inc.

February 3, 2009 (New York, New York): Red Oak Fund, LP ("Red Oak"), a fund
managed by Red Oak Partners, LLC, announced today that it intends to commence
a tender offer for up to 70% of the outstanding shares of CLST Holdings, Inc.
("CLHI"), which shares are traded on the pink sheets, at a offer price of $0.25
per share. The offer price will represent an approximate 72% premium over the
closing price on Monday, February 2, 2009, and an approximate 57% premium over
the prior 30-day average traded price of CLHI's common stock as reported on the
pink sheets. On January 30, 2009, Red Oak Partners, LLC both mailed and faxed a
letter requesting, pursuant to Rule 14d-5(a) of the rules and regulations of the
Securities Exchange Act of 1934, as amended, the use of the CLHI's stockholder
list and security position listings for the purpose of disseminating the
forthcoming offer to purchase and related materials to the holders of CLHI's
common stock.

Red Oak's offer to purchase will be filed with the Securities and Exchange
Commission on Schedule TO and will be made only by a formal offer to purchase
and letter of transmittal. The consummation of the tender offer will be subject
to the conditions to be specified in the offer documents.

Additional Information

The tender offer described in this press release has not yet commenced, and this
press release is neither an offer to purchase nor a solicitation of an offer to
sell CLHI's common stock. The solicitation and offer to purchase CLHI's common
stock will only be made pursuant to a formal offer to purchase and letter of
transmittal. At the time the tender offer is commenced, Red Oak will file the
offer to purchase and related materials with the Securities and Exchange
Commission. CLHI's stockholders should read the offer to purchase and other
related documents carefully when they become available since they will contain
important information, including the terms and conditions of the offer. The
offer to purchase and other filed documents will be available (when filed) for
free atthe Securities and Exchange Commission's website at www.sec.gov. The
offer to purchase and related materials will be provided  (when available) at
no cost by Red Oak. Stockholders are encouraged to contact Mr. David Sandberg,
Managing Director of Red Oak at telephone number (212) 614-8952 or by email
at dsandberg@redoakpartners.com.

```
</TEXT>
</DOCUMENT>
```



EX-99.1 2 a09-4634_1ex99d1.htm EX-99.1

**Exhibit 99.1**

**CLST HOLDINGS, INC. NEWS RELEASE**

**Contact:**
Robert A. Kaiser
CLST Holdings, Inc.
(972) 267-0500
ir@clstholdings.com

**Red Oak Fund LP Announces Intention to Commence Tender Offer For Shares of CLST Holdings, Inc.**

Dallas, Texas (February 4, 2009) – CLST Holdings, Inc. announced today that it has been notified by Red Oak Fund, L.P., a fund managed by Red Oak Partners, LLC, that it intends to commence a tender offer for up to 70% of the outstanding shares of common stock of CLST at a price of $0.25 per share. The tender offer is under review and consideration by CLST's board of directors. No later than 10 business days from the date of commencement of Red Oak's tender offer, CLST will advise its stockholders of (1) whether it recommends acceptance or rejection of the tender offer; expresses no opinion and remains neutral toward such tender offer; or is unable to take a position with respect to such tender offer, and (2) the reasons for the position it takes. CLST requests its stockholders to defer making a determination whether to accept or reject such tender offer until they have been advised of CLST's position.



8-K 1 a09-4928_18k.htm CURRENT REPORT OF MATERIAL EVENTS OR CORPORATE
CHANGES

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 8-K

### CURRENT REPORT
### Pursuant to Section 13 or 15(d) of
### the Securities Exchange Act of 1934

Date of Report: **February 5, 2009**
(Date of earliest event reported)

# CLST HOLDINGS, INC.
(Exact name of registrant as specified in its charter)

| **Delaware** | **0-22972** | **75-2479727** |
|---|---|---|
| (State or Other Jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

**17304 Preston Road, Suite 420**
**Dallas, Texas, 75252**
(Address of principal executive offices and zip code)

**(972) 267-0500**
(Registrant's telephone number, including area code)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐     Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
☐     Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)
☐     Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))
☐     Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))



EXHIBIT
D

**Item 1.01.**          **Entry into a Material Definitive Agreement.**

On February 5, 2009, CLST Holdings, Inc., a Delaware corporation (the "*Company*"), adopted a rights plan and declared a dividend of one preferred share purchase right for each outstanding share common stock of the Company. The dividend is payable to our stockholders of record as of February 16, 2009. The terms of the rights and the rights plan will be set forth in a Rights Agreement, by and between the Company and Mellon Investor Services LLC, as Rights Agent (the "*Rights Plan*").

This summary of rights provides only a general description of the Rights Plan, and thus, should be read together with the entire Rights Plan, which will be filed as an exhibit to the registration statement on Form 8-A that will be filed by the Company at the time the dividend is payable.

CLST adopted the Rights Plan in an effort to protect stockholder value by attempting to protect against a possible limitation on our ability to use our net operating loss carryforwards (the "*NOLs*") to reduce potential future federal income tax obligations. We have experienced and continue to experience substantial operating losses, and under the Internal Revenue Code and rules promulgated by the Internal Revenue Service, we may "carry forward" these losses in certain circumstances to offset any current and future earnings and thus reduce our federal income tax liability, subject to certain requirements and restrictions. To the extent that the NOLs do not otherwise become limited, we believe that we will be able to carry forward a significant amount of NOLs, and therefore these NOLs could be a substantial asset to us. However, if we experience an "Ownership Change," as defined in Section 382 of the Internal Revenue Code, our ability to use the NOLs will be substantially limited, and the timing of the usage of the NOLs could be substantially delayed, which could therefore significantly impair the value of that asset.

The Rights Plan is intended to act as a deterrent to any person or group acquiring 4.9% or more of our outstanding common stock (an "*Acquiring Person*") without our approval. Stockholders who own 4.9% or more of our outstanding common stock as of the close of business on February 16, 2009 will not trigger the Rights Plan so long as they do not (i) acquire any additional shares of common stock or (ii) fall under 4.9% ownership of common stock and then re-acquire 4.9% or more of the common stock. The Rights Plan does not exempt any future acquisitions of common stock by such persons. Any rights held by an Acquiring Person are null and void and may not be exercised. We may, in its sole discretion, exempt any person or group from being deemed an Acquiring Person for purposes of the Rights Plan.

*The Rights*. We authorized the issuance of one right per each outstanding share of our common stock payable to our stockholders of record as of February 16, 2009. Subject to the terms, provisions and conditions of the Rights Plan, if the rights become exercisable, each right would initially represent the right to purchase from us one ten-thousandth of a share of our Series B Junior Participating Preferred Stock ("*Series B Preferred Stock*") for a purchase price of $6.01 (the "*Purchase Price*"). If issued, each fractional share of Series B Preferred Stock would give the stockholder approximately the same dividend, voting and liquidation rights as does one share of our common stock. However, prior to exercise, a right does not give its holder any rights as a stockholder of the Company, including without limitation any dividend, voting or liquidation rights.

*Series B Preferred Stock Provisions*.  Each one ten-thousandth of a share of Series B Preferred Stock, if issued: (1) will not be redeemable; (2) will entitle holders to quarterly dividend payments of $0.01 per one ten-thousandth of a share of Series B Preferred Stock, or an amount equal to the dividend paid on one share of common stock, whichever is greater; (3) will entitle holders upon liquidation either to receive $1.00 per one ten-thousandth of a share of Series B Preferred Stock or an amount equal to the payment made on one share of common stock, whichever is greater; (4) will have the same voting power as one share of common stock; and (5) if shares of our common stock are exchanged via merger, consolidation, or a similar transaction, will entitle holders to a per share payment equal to the payment made on one share of common stock. The value of one one-hundredth interest in a Preferred Share should approximate the value of one share of common stock.

*Exercisability*. The rights will not be exercisable until the earlier of (i) 10 business days after a public announcement by us that a person or group has become an Acquiring Person and (ii) 10 business days after the commencement of a tender or exchange offer by a person or group for 4.9% of the common stock.

We refer to the date that the rights become exercisable as the "*Distribution Date*." Until the Distribution Date, our common stock certificates will evidence the rights and will contain a notation to that effect. Any transfer of shares of common stock prior to the Distribution Date will constitute a transfer of the associated rights. After the Distribution Date, the rights may be transferred other than in connection with the transfer of the underlying shares of common stock.

After the Distribution Date, each holder of a right, other than rights beneficially owned by the Acquiring Person (which will thereupon become null and void), will thereafter have the right to receive upon exercise of a right and payment of the Purchase Price, that number of shares of common stock having a market value at the time of exercise of two times the Purchase Price.

*Exchange*. After the Distribution Date, we may exchange the rights (other than rights owned by an Acquiring Person, which will have become null and void), in whole or in part, at an exchange ratio of one share of common stock, or a fractional share of Series B Preferred Stock (or of a share of a similar class or series of the Company's preferred stock having similar rights, preferences and privileges) of equivalent value, per right (subject to adjustment).

*Expiration*. The rights and the Rights Plan will expire on the earliest of (i) February 13, 2019, (ii) the time at which the rights are redeemed pursuant to the Rights Agreement, (iii) the time at which the rights are exchanged pursuant to the Rights Agreement, (iv) the repeal of Section 382 of the Code or any successor statute if we determine that the Rights Agreement is no longer necessary for the preservation of NOLs, and (v) the beginning of a taxable year of the Company to which we determine that no NOLs may be carried forward.

*Redemption*. At any time prior to the time an Acquiring Person becomes such, we may redeem the rights in whole, but not in part, at a price of $0.01 per right (the "*Redemption Price*"). The redemption of the rights may be made effective at such time, on such basis and with such conditions as we in our sole discretion may establish. Immediately upon any redemption of the rights, the right to exercise the rights will terminate and the only right of the holders of rights will be to receive the Redemption Price.

*Anti-Dilution Provisions*. We may adjust the purchase price of the shares of Series B Preferred Stock, the number of shares of Series B Junior Preferred Stock issuable and the number of outstanding rights to prevent dilution that may occur as a result of certain events, including among others, a stock dividend, a stock split or a reclassification of the shares of Series B Preferred Stock or our common stock. No adjustments to the purchase price of less than 1% will be made.

*Amendments*. Before the Distribution Date, we may amend or supplement the Rights Plan without the consent of the holders of the rights. After the Distribution Date, we may amend or supplement the rights Plan only to cure an ambiguity, to alter time period provisions, to correct inconsistent provisions, or to make any additional changes to the Rights Plan, but only to the extent that those changes do not impair or adversely affect any rights holder.

The rights have certain anti-takeover effects. The rights will cause substantial dilution to a person or group who attempts to acquire the Company on terms not approved by us. The rights should not interfere with any merger or other business combination approved by us since we may redeem the rights at $0.01 per right at any time until the date on which a person or group has become an Acquiring Person.

## Item 3.03.   Material Modification to Rights of Security Holders.

The information set forth under "Item 1.01. Entry into a Material Definitive Agreement" of this Current Report on Form 8-K is incorporated into this Item 3.03 by reference.

## Item 5.03.   Amendments to Articles of Incorporation or Bylaws; Change in Fiscal Year

In connection with the adoption of the Rights Plan, we approved a Certificate of Designations of Series B Junior Participating Preferred Stock designating 200,000 shares of Series B Preferred Stock. We filed the

3



Certificate of Designations for the shares of Series B Preferred Stock on February 5, 2009 with the Secretary of State of the State of Delaware and the Certificate of Designations became effective on such date. The full text of the Certificate of Designations is attached hereto as Exhibit 3.1 and is incorporated herein by reference. A description of the shares of Series B Preferred Stock is set forth in Item 1.01 of this Current Report on Form 8-K and is incorporated herein by reference. Such description is qualified in its entirety by reference to the Certificate of Designations.

**Item 9.01.**        **Financial Statements and Exhibits.**

   (d)  Exhibits

       3.1   Certificate of Designations of Series B Junior Participating Preferred Stock.

       99.1  Press release issued February 5, 2009 by the Company

4

**Signature**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

CLST HOLDINGS, INC.

By: /s/ ROBERT A. KAISER
       Robert A. Kaiser
       President, Chief Executive Officer,
       Chief Financial Officer, Treasurer and Assistant
       Secretary

February 5, 2009

```
<DOCUMENT>
<TYPE>SC TO-C
<SEQUENCE>1
<FILENAME>clhischeduleto20090209.txt
<TEXT>
UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

SCHEDULE TO
(Rule 14d-100)
Tender Offer Statement Under Section 14(d)(1) or 13(e)(1)
of the Securities Exchange Act of 1934

CLST Holdings, Inc.
(Name of Subject Company (Issuer))

Red Oak Fund, L.P.
(Name of Filing Person (Offeror))

Common Stock, $.01 par value
(Title of Class of Securities)

150925204
(CUSIP Number of Class of Securities)

David Sandberg
Red Oak Capital Partners, LLC
145 Fourth Avenue, Suite 15A
New York, NY  10003
(212) 614-8952

(Name, address and telephone number of person authorized to receive notices
and communications on behalf of filing person)


CALCULATION OF FILING FEE

Transaction Valuation*
N/A

Amount of Filing Fee**
N/A

* Estimated for purposes of calculating the filing fee only.
** The amount of the filing fee, calculated in accordance with Rule 0-11 under
the Securities Exchange Act of 1934, as amended.

_ Check the box if any part of the fee is offset as provided by Rule 0-11(a)(2)
and identify the filing with which the offsetting fee was previously paid.
Identify the previous filing by registration statement number, or the Form or
Schedule and the date of its filing.

Amount Previously Paid: N/A

Filing Party: N/A

Form or Registration No.: N/A

Date Filed: N/A
```



EXHIBIT
E

[X] Check the box if the filing relates solely to preliminary communications
made before the commencement of a tender offer.
Check the appropriate boxes below to designate any transactions to which the
statement relates:
[ ] third-party tender offer subject to Rule 14d-1.
[ ] issuer tender offer subject to Rule 13e-4.
[ ] going-private transaction subject to Rule 13e-3.
[ ] amendment to Schedule 13D under Rule 13d-2.

Check the following box if the filing is a final amendment reporting the results
of the tender offer: [ ]


FOR IMMEDIATE RELEASE

For further information contact David Sandberg,
Red Oak Partners, LLC
(212) 614-8952, dsandberg@redoakpartners.com

Red Oak Abandons Previously Announced Tender Offer Plans Due to Adoption by
CLST Holdings, Inc. of a "Poison Pill" Rights Plan

New York, New York, February 9, 2009.  Red Oak Fund, LP ("Red Oak"), a fund
managed by Red Oak Partners, LLC, announced today that it is terminating its
previously announced plan to commence a tender offer for shares of common stock
of CLST Holdings, Inc. ("CLHI") in light of CLHI's announcement on Friday,
February 6th that it adopted a "poison pill" rights plan.  "This hostile action
by CLHI makes little sense to us given our intent to conduct a friendly offer
to shareholders to provide a liquidity opportunity (in an otherwise illiquid
security) at a significant premium to prior and 30-day average prices," said
David Sandberg, managing partner of Red Oak Partners, LLC.  Mr. Sandberg
continued: "As the company is under a shareholder-approved plan of dissolution,
the adoption of this poison pill causes us to question whether: a) the
shareholder-approved plan of dissolution is still in place; or b) CLHI's Board
wants to abandon the plan approved by shareholders and already in place.  We
are dismayed that they took this step without even evaluating the terms of our
intended offer which would have been set forth in our offer documents.  On
Tuesday, February 3rd, we received communication via email from CLHI indicating
they would like to discuss our plans, but on the call all they did was indicate
they would comply with their legal obligations and provide a shareholder list.
This seems to indicate to us that the Board's entrenching its position takes
precedence over providing details of an offer to shareholders and allowing
shareholders to decide for themselves, particularly when no such rights plan or
provision was in place prior to our announcement."

"We question the purported excuse or rationale for this plan about preserving
net operating loss carryforwards in the company.  Since CLHI had previously
adopted a plan to liquidate, it does not appear to us that the net operating
loss carry forward or NOL will ever benefit the current shareholders.
Virtually all companies under shareholder-approved plans of dissolution have
net losses from operations, thus we think the market attaches little relevance
to tax loss carryforwards (NOLs) for such companies."  Mr. Sandberg continued,
"CLHI has included provisions in its poison pill which seem directly intended
to limit our tender offer.  As large current shareholders, we are concerned
with the Board's actions and intentions."

In light of the actions taken by CLHI in adopting its rights plan, Red Oak is

abandoning its previously announced plan to commence a tender offer for CLHI
shares.  Mr. Sandberg stated, "we are very disappointed that CLHI has seen fit
to block a potential source of liquidity for its shareholders."
</TEXT>
</DOCUMENT>

-----Original Message-----
From: Marcelo Claure <marcelo.claure@BRIGHTSTARCORP.com>
To: 'rakkaiser@aol.com' <rakkaiser@aol.com>
Sent: Thu, 12 Feb 2009 6:14 pm
Subject: RE: (no subject)


Both - red oak more aggressive.

R. Marcelo Claure
Chairman & CEO
Brightstar
9725 NW 117th Avenue #300 l Miami, FL 33178 phone l 305.421.6000 email l marcelo.claure@brightstarcorp.com

EXHIBIT

F

PENGAD-Bayonne, N. J.

REDACTED

www.brightstarcorp.com Register now for VIP access to Club Brightstar at Mobile World Congress
2009 at
www.clubbrightstar.com

Brightstar is a global leader in distribution and supply chain solutions for the converged telecom industry.
We span the globe, operating manufacturing, distribution and sales facilities in 50 countries on six continents.
In 2007, we exceeded $4.8 Billion in gross revenues. Learn more at brightstarcorp.com.

-----Original Message-----
From: rakkaiser@aol.com [mailto:rakkaiser@aol.com]
Sent: Thursday, February 12, 2009 7:04 PM
To: Marcelo Claure
Subject: Re: (no subject)

Marcelo

Is it David Sandberg or Red Oak Partners the ones asking for your shares??

Robert Kaiser
w 972-267-0500 ext 4101
c 972-679-6667

-----Original Message-----
From: Marcelo Claure <marcelo.claure@BRIGHTSTARCORP.com>
To: Robert Kaiser (rakkaiser@aol.com) <rakkaiser@aol.com>
Sent: Thu, 12 Feb 2009 5:28 pm
Subject: (no subject)

Hey, its Marcelo. Can you call me. Have a question

R. Marcelo Claure

Chairman & CEO

Brightstar

9725 NW 117th Avenue #300 I Miami, FL 33178

phone I 305.421.6000

email I marcelo.claure@brightstarcorp.com

www.brightstarcorp.com

Register now for VIP access to Club Brightstar at Mobile World Congress
2009 at www.clubbrightstar.com

-------------------------------------------------------------

2

Brightstar is a global leader in distribution and supply chain solutions for the converged telecom industry.

We span the globe, operating manufacturing, distribution and sales facilities in 50 countries on six continents.

In 2007, we exceeded $4.8 Billion in gross revenues. Learn more at brightstarcorp.com.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
CLST Holdings, Inc.,

## DEFENDANTS
RED OAK FUND, LP, RED OAK PARTNERS, LLC, and DAVID SANDBERG

**(b)** County of Residence of First Listed Plaintiff   Dallas County, Texas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Newcastle County, Del.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

RECEIVED
FEB 1 3 2009

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jackson Walker L.L.P., 901 Main Street, Ste. 6000, Dallas, Texas 75202

Attorney (If Known)

3-09CV0291-P

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Sections 78m and 78n
Brief description of cause:
Securities violations.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE
02/13/2009

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____