**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CLST HOLDINGS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 3-09CV0291-P** |
| | § | |
| **RED OAK PARTNERS, LLC,** | § | **JURY TRIAL REQUESTED** |
| **RED OAK FUND, L.P., PINNACLE** | § | |
| **PARTNERS, LLC, PINNACLE FUND** | § | |
| **LLLP, BEAR MARKET OPPORTUNITY** | § | |
| **FUND, L.P., AND DAVID SANDBERG,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**AND APPLICATION FOR INJUNCTIVE RELIEF**

COMES NOW, Plaintiff CLST Holdings, Inc. ("CLST" or the "Company") and files this its First Amended Complaint and Application for Injunctive Relief, complaining of Defendants Red Oak Partners, LLC, Red Oak Fund, L.P., Pinnacle Partners, LLC, Pinnacle Fund, LLLP, Bear Market Opportunity Fund, L.P., and David Sandberg (collectively, the "Red Oak Group"), and in support thereof would respectfully show the Court as follows:

**INTRODUCTION**

1.      CLST brings this action for injunctive and declaratory relief against the Red Oak Group arising out of its violations of the securities laws of the United States and the Delaware General Corporation Law (the "DGCL") with regard to the Red Oak Group's illegal attempts to take control of CLST.

2.      In late 2006, the Company and certain of its directors and stockholders discussed liquidating the Company's operating assets and dissolving the Company. Ultimately, the Board of Directors (the "Board") determined that the Company should begin the liquidation process.

3.      From late 2006 through the middle of 2007, the Board and the Company's stockholders approved a series of transactions and agreements that would liquidate the Company's assets and dissolve the Company.  Given the nature of certain of the Company's holdings, and the terms of certain sale agreements, the liquidation and dissolution of the Company would take multiple years to complete.

4.      During 2008, the Board and the Company's advisors engaged in a detailed review of the Company's historical net operating loss carry-forwards (the "NOLs").  As a result of that review, the Board determined that the Company, as of the end of 2008, had $125 million in NOLs that do not begin to expire until after November 13, 2020 and can be utilized to offset future income.

5.      In light of the significant value of the NOLs and the time required to complete dissolution of the Company, in late 2008 and early 2009, the Board resolved to enter into certain transactions, which, if profitable, would allow the Company to utilize the NOLs to drive value for its stockholders (the "Transactions").

6.      The Red Oak Group, however, has determined that the Company should be liquidated immediately to drive its short-term profit and liquidity, the NOLs should be forfeited and the Company's stockholders should be irretrievably denied the value associated with the NOLs and the Transactions.  To further its value-destroying cause, the Red Oak Group has commenced derivative litigation against the Company challenging the Transactions and has initiated a hostile takeover of the Company.

7.      In its hostile takeover, among other activities, the Red Oak Group has violated federal securities laws by hiding its true intentions through false and misleading disclosures and omissions in its February 18, 2009 Schedule 13D filing with the SEC (the "Red Oak Group

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**AND APPLICATION FOR INJUNCTIVE RELIEF** - Page 2

Schedule 13D"); instituting a campaign to aggressively purchase the Company's stock without complying with the disclosure and filing requirements of Section 14(d) of the Exchange Act; engaging in private purchases of the Company's stock after formally initiating a tender offer in contravention of Rule 14(d)-10; illegally using a stockholder list provided by the Company for the purpose of its tender offer to solicit private purchases of stock from the Company's stockholders; misrepresenting the purported abandonment of its tender offer in contravention of Section 14(e) of the Exchange Act; attempting to mislead the Company's stockholders by proposing to nominate a slate of directors at the Company's 2009 annual meeting during its ongoing illegal tender offer; improperly initiating a fishing expedition through an informational demand of the Company pursuant to Section 220 of the DGCL; improperly attempting to nominate four directors for election at the 2009 annual meeting when the Company's public filings make clear that only two directorships are subject to election; and proposing a series of deceptive resolutions for stockholder approval at the 2009 annual meeting that are not the proper subjects of business pursuant to Delaware or federal law.

8.     The declaratory and equitable relief sought herein is necessary to provide holders of CLST securities with all the information to which they are entitled under United States securities laws, to restore the integrity of the market, and to prevent Red Oak from pursuing its value-destroying campaign to obtain control of the Company.   In addition to corrective disclosures, injunctive relief is necessary to remedy the harm already caused by the Red Oak Group's unlawful conduct, which cannot be cured merely through corrective disclosure. Therefore, the Red Oak Group should be (1) enjoined from acquiring additional CLST shares, (2) enjoined from exercising its rights as a stockholder, including its right to vote, with respect to all CLST shares illegally acquired in the course of its illegal tender offer and with respect to all

proxies or rights granted by others obtained as a result of its illegal activities, (3) enjoined from contacting CLST's stockholders regarding the purchase of their shares or any proposed business relating to CLST's annual stockholders' meeting, and (4) ordered to offer withdrawal rights to CLST stockholders from whom it purchased shares in its unlawful tender offer or to dispose of such shares to unaffiliated third parties.  The Red Oak Group would otherwise be able to profit from its failure to comply with United States securities laws to the detriment of the holders of CLST securities and the investing public.

## PARTIES

9.     CLST is a Delaware corporation having its principal place of business at 17304 Preston Road, Suite 420, Dallas, Texas 75252.  Prior to the sale of substantially all of its operating assets, the Company was a leading distributor of wireless products and provider of value-added logistics services to the wireless communications industry.  CLST's common stock is currently traded on the over-the-counter (OTC) market and is quoted on an inter-dealer electronic system known as the Pink Sheets.

10.     David Sandberg ("Sandberg") is an individual and a citizen of New York.  Sandberg is the managing member of Red Oak Partners and may be served with process at his usual place of business, 145 Fourth Avenue, Suite 15A, New York, New York 10003.  According to the Red Oak Group Schedule 13D, Sandberg beneficially owns 4,561,554 shares of CLST, representing 19.29% of all of CLST's outstanding common stock.[1]

11.     Red Oak Partners, LLC ("Red Oak Partners") is a New York limited liability company having its principal place of business at 145 Fourth Avenue, Suite 15A, New York, New York 10003.  Red Oak Partners may be served with process by serving its managing

---

[1] In its SEC filings and correspondence to date, the Red Oak Group has calculated its percentage of beneficial ownership at  22.19% based on the 20,553,205 shares outstanding of CLST's common stock, as reported in CLST's October 14, 2008 10-Q.

member, David Sandberg, at its principal place of business.  According to the Red Oak Group Schedule 13D, Red Oak Partners beneficially owns 4,561,554 shares of CLST, representing 19.29% of all of CLST's outstanding common stock.[2]  Red Oak Partners controls, directly or indirectly, each of the other entities in the Red Oak Group.

12.    Red Oak Fund, L.P. ("Red Oak Fund") is a Delaware limited partnership having its principal place of business at 145 Fourth Avenue, Suite 15A, New York, New York 10003. Red Oak Fund may be served with process through its registered agent, Blumbergexcelsior Corporate Services, Inc., 1220 N. Market Street, Suite 806, Wilmington, Delaware 19801.  Red Oak Partners is the general partner of Red Oak Fund and controls Red Oak Fund.  According to the Red Oak Group Schedule 13D, Red Oak Partners beneficially owns 3,341,106 of CLST, representing 14.13% of all of CLST's outstanding common stock.[3]

13.    Pinnacle Partners, LLC ("Pinnacle Partners") is purportedly a Colorado limited liability company having its principal place of business at 32065 Castle Court, Suite 100, Evergreen, Colorado 80439.[4]  Pinnacle Partners is required by Colorado law to maintain a registered agent but has no registered agent.  Pinnacle Partners may therefore be served with process by certified mail, return receipt requested at 32065 Castle Court, Suite 100, Evergreen, Colorado 80439 with the same effect as if served by its registered agent pursuant to Colorado Revised Statute 70-90-704.  According to the Red Oak Group Schedule 13D, Pinnacle Partners,

---

[2] In its SEC filings and correspondence to date, the Red Oak Group has calculated its percentage of beneficial ownership at  22.19% based on the 20,553,205 shares outstanding of CLST's common stock, as reported in CLST's October 14, 2008 10-Q.

[3] In its SEC filings and correspondence to date, the Red Oak Group has calculated this percentage as 16.26%. based on the 20,553,205 shares outstanding of CLST's common stock, as reported in CLST's October 14, 2008 10-Q.

[4] The Colorado Secretary of State does not have any record of Pinnacle Partners, LLC.

the general partner of Pinnacle Fund LLLP,[5] beneficially owns 960,448 shares of CLST, representing 4.06% of all of CLST's outstanding common stock.[6]

14.     Pinnacle Fund LLLP ("Pinnacle Fund") is a Colorado limited liability limited partnership having its principal place of business at 32065 Castle Court, Suite 100, Evergreen, Colorado 80439.  Pinnacle Fund may be served with process by serving its registered agent, White Peaks Group, LLC, 32065 Castle Court, Suite 100, Evergreen, Colorado 80439.  According to the Red Oak Group Schedule 13D, Pinnacle Fund is controlled by Pinnacle Partners, which is controlled by Red Oak Partners.

15.     Bear Market Opportunity Fund, L.P. ("Bear Fund") is a Delaware limited partnership having its principle place of business at 112 E. Pecan Street, Suite 806, San Antonio, Texas 78205.  Bear Fund may be served with process by serving its registered agent, Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  Red Oak Partners manages Bear Fund and makes its investment decisions.  According to the Red Oak Group Schedule 13D, Bear Fund holds 260,000 shares of CLST, representing 1.10% of all of CLST's outstanding common stock.[7]

16.     According to the Red Oak Group Schedule 13D, Red Oak Partners beneficially owns 4,561,554 shares of CLST's common stock, representing 19.29% of all of CLST's outstanding common stock, including the 3,341,106 shares held by Red Oak Fund, the 960,448

---

[5] The Colorado Secretary of State (contrary to the Red Oak Group's February 18, 2009 SEC filing) states that White Peaks Group, LLC, is the general partner of Pinnacle Fund.  White Peaks Group, LLC's address is likewise listed as 32065 Castle Court, Suite 100, Evergreen, Colorado 80439.

[6] In its SEC filings and correspondence to date, the Red Oak Group has calculated this percentage as 4.67% based on the 20,553,205 shares outstanding of CLST's common stock, as reported in CLST's October 14, 2008 10-Q.

[7] In its SEC filings and correspondence to date, the Red Oak Group has calculated this percentage as 1.27% based on the 20,553,205 shares outstanding of CLST's common stock, as reported in CLST's October 14, 2008 10-Q.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**AND APPLICATION FOR INJUNCTIVE RELIEF** - Page 6

shares beneficially owned by Pinnacle Partners through Pinnacle Fund, and the 260,000 shares held by Bear Fund.[8]

## JURISDICTION AND VENUE

17.     This action arises under Sections 13(d), 14(a), 14(d), and 14(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. §§ 78m and 78n, and the SEC rules and regulations promulgated thereunder.

18.     Jurisdiction over the subject matter of this action is based upon 28 U.S.C. § 1331 and 15 U.S.C. § 78aa.

19.     Venue in this district is proper pursuant to 28 U.S.C. §1391(b)(2) and 15 U.S.C. §78 aa.

20.     Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 because an actual, justiciable controversy exists regarding the Red Oak Group's compliance with Sections 13(d), 14(a), 14(d), and 14(e) of the Exchange Act and the SEC rules and regulations promulgated thereunder.   Declaratory relief is also appropriate pursuant to 28 U.S.C. § 2201 because an actual, justiciable controversy exists regarding CLST's compliance with 8 Del. C. Section 211 and CLST's compliance with its Charter and By-laws regarding the composition of its Board.

## FACTUAL BACKGROUND

21.     On December 18, 2006, the Company entered into an agreement to sell all of its U.S. operations and Miami-based Latin American operations to Brightpoint, Inc. for approximately $88 million (the "U.S. Sale").   The U.S. Sale agreement required that the Company take no steps to dissolve until seven months after closing.

---

[8] According to the Red Oak Schedule 13D, Red Oak Fund, Pinnacle Fund, and Bear Fund (the "Funds") are private investment vehicles formed for the purpose of investing and trading in a wide variety of securities and financial instruments that directly own the shares at issue.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**AND APPLICATION FOR INJUNCTIVE RELIEF** - **Page 7**

22.     Also on December 18, 2006, the Company entered into an agreement to sell all of its Mexico operations to Soluciones Inalambricas SA for approximately $20 million (the "Mexico Sale").

23.     The U.S. Sale and Mexico Sale, together, constituted a sale of substantially all of the Company's assets.

24.     On January 22, 2007, the Board determined to liquidate and dissolve the Company pursuant to a plan of dissolution (the "Plan of Dissolution"). The Plan of Dissolution, which would be subject to stockholder approval, authorizes the sale of all of the Company's assets, including the U.S. Sale, and contemplates that the Company's stockholders could expect to receive between $2.91 and $3.25 per share in liquidating dividends. The Plan of Dissolution expressly provides that "the board of directors may modify, amend or abandon the Plan of Dissolution, notwithstanding stockholder approval, to the extent permitted by the DGCL."

25.     On February 20, 2007, the Company filed a definitive proxy statement soliciting stockholder approval of, among other things, the U.S. Sale, the Mexico Sale, and the Plan of Dissolution. The Company's stockholders approved and adopted the U.S. Sale, the Mexico Sale, and the Plan of Dissolution at a special meeting of the Company's stockholders on March 28, 2007.

26.     On March 30, 2007, the U.S. Sale closed, beginning the seven month period in which the Company could not initiate the process of dissolution pursuant to the Plan of Dissolution, which would expire on October 30, 2007.

27.     Between June 26, 2007 and November 1, 2007, the Company paid dividends of approximately $43.2 million or $2.10 per share in connection with the Board's good faith execution of the Plan of Dissolution.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**AND APPLICATION FOR INJUNCTIVE RELIEF** - Page 8

28.     At the end of 2007, seven months had expired since the U.S. Sale closed and the Company was undertaking the process of liquidating its assets and dissolving its subsidiaries, including eight non-operating U.S. entities, four non-operating foreign entities, and two dormant foreign entities (which never conducted operations).   Dissolution proceedings in foreign countries are cumbersome and lengthy.   For example, dissolution of the Company's Swedish entity cannot take place by law until December 31, 2009.

29.     During 2008, in connection with the Plan of Dissolution, the Board commissioned from the Company's advisors a detailed review of the Company's historical net operating loss carry-forwards (the "NOLs").   As a result of that review, the Board determined that the Company, as of the end of 2008, had $125 million in NOLs that do not begin to expire until after November 13, 2020 and can be utilized to reduce future income tax liability.   The NOLs are subject to certain federal laws designed to prevent the purchase and sale of companies to exploit operating loss carry-forwards.   Under those laws, the acquisition or disposition of any of the Company's stock by a holder of 5% or more of the Company's stock can reduce the Company's ability to use the NOLs, and the sale or dissolution of the Company would result in the forfeiture of the NOLs.

30.     Given the amount of time required to complete the Plan of Dissolution, the cash on hand as a result of certain asset sales, and the fact that any NOLs that the Company fails to exploit prior to dissolution will be forever and irretrievably forfeited, the Company entered into three transactions, on November 10, 2008, December 12, 2008, and February 12, 2009, in which it purchased accounts receivable (the "Transactions").   Complete reports regarding the financial results of the Transactions are not currently available.   Preliminary, unaudited financial results are available for one of the Transactions and are positive.   Financial results should be available

regarding the other two Transactions over the course of the next three to four months.  If the Company's operating results from these asset purchases are profitable, the Company will be able to utilize its NOLs and create value for its stockholders.

31.     In December 2008, Sandberg approached the Board on behalf of himself and the rest of the Red Oak Group regarding a potential substantial investment in CLST's common stock and proposed that the Red Oak Group be given control of CLST's Board.  Upon information and belief, the Red Oak Group's sole purpose in making an investment in CLST was to derive short-term gains through the liquidation of the Company pursuant to the Plan of Dissolution, and the Red Oak Group has at no time been interested in or willing to hold a long-term investment in CLST.

32.     The Company did not hold an annual meeting of its stockholders in 2008.  The Board is staggered into three classes of approximately equal size, such that if the Company had held an annual meeting of its stockholders in 2008, the Company's sole Class I director position would have been subject to election at that meeting.  The Company's sole Class I director will stand for election at the next meeting of the Company's stockholders for the purpose of electing directors.

33.     On January 15, 2009, the Red Oak Group initiated a strategy to take control of the Company.  If successful, that strategy would result in the forfeiture of the NOLs, and the immediate liquidation of the Company by the Red Oak Group in order to increase its own short-term gains and liquidity at the expense of the Company's other stockholders.  The strategy was straightforward: accumulate as much of the Company's stock as possible as quickly as possible, and, if necessary, commence a proxy fight for control at the 2009 annual meeting of the Company's stockholders.

34.     According to the Red Oak Group Schedule 13D, on January 15, 2009, the Red Oak Group purchased 5,000 shares of the Company's stock.  On January 28, 2009, the Red Oak Group purchased an additional 1,800 shares.  Unsurprisingly, the Red Oak Group was only able to accumulate small amounts of the Company's stock on the open market, as the Company's stock is traded on the Pink Sheets and is relatively illiquid.

35.     On or about January 30, 2009, Sandberg contacted CLST about making a tender offer to the Company's stockholders.  Pursuant to Rule 14d-5(a), on January 30, 2009, the Red Oak Group requested that CLST either disseminate its tender offer to CLST's stockholders or provide it with a stockholder list and security position listings.  In making its request, the Red Oak Group acknowledged its obligations under 14d-5(f) of the Exchange Act with respect to the requested stockholder list.  A true and correct copy of the Red Oak Group's January 30, 2009 correspondence, which CLST received on February 2, 2009, is attached hereto as Exhibit A.

36.     Also on February 2, 2009, the Red Oak Group purchased 5,000 shares of the Company's stock.

37.     On February 3, 2009, the Red Oak Group issued a press release formally announcing its intention to commence a tender offer for up to 70% of CLST's outstanding stock at an offer price of $0.25 per share.  A true and correct copy of the February 3, 2009 press release is attached hereto as Exhibit B.

38.     That very same day, the Red Oak Group purchased one million shares of the Company's stock in a private transaction.  Upon information and belief, given the relatively illiquid market for the Company's stock, one million shares of the Company's stock could only have been purchased by the Red Oak Group in one day if it had privately solicited such sale from the Company's stockholders on the same day it publicly disclosed its tender offer.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**AND APPLICATION FOR INJUNCTIVE RELIEF** - Page 11

39.     On February 4, 2009, the Company publicly announced the Red Oak Group's proposed tender offer.  The Company's announcement stated that the Board was reviewing and considering the tender offer, indicated that the Board would make a recommendation as to the tender offer as soon as reasonably practicable, and requested that CLST's stockholders take no action with respect to the tender offer until the Board could provide its recommendation.  A true and correct copy of the Company's February 4, 2009 press release is attached hereto as Exhibit C.

40.     In light of the Red Oak Group's proposed tender offer, the unusually high trading volume in CLST's stock since January 15, 2009, and the effect of stockholder turnover on the Company's NOLs, the Company adopted a rights plan on February 5, 2009 (the "Rights Plan"), which would become effective on February 16, 2009.  A true and correct copy of the Company's Form 8-K announcing the Rights Plan is attached hereto as Exhibit D.

41.     In accordance with Rule 14d-5(a)'s requirements, the Company provided Red Oak Partners a stockholder list and security position statement on February 6, 2009.  On or around February 6, 2009, Red Oak Partners informed CLST that it owned 4.7% of CLST's outstanding shares.[9]

42.     On February 9, 2009, the Red Oak Group announced the termination of its previously announced plan to commence a tender offer for shares of CLST's common stock in light of the Rights Plan.  A true and correct copy of the February 9, 2009 press release is attached hereto as Exhibit E.

43.     Despite the Red Oak Group's stated abandonment of the tender offer, it had no intention of abandoning its plan to acquire large quantities of CLST's common stock as quickly

---

[9] This figure is presumably based on the 20,553,205 shares outstanding of CLST's common stock, as reported in CLST's October 14, 2008 10-Q.

as possible in an effort to take control of the Company and destroy stockholder value through an immediate liquidation of the Company's assets and dissolution of the Company.  As a result, the Red Oak Group's actions subsequent to its announcement of the abandonment of its tender offer have been wholly inconsistent with its announcement and violate federal securities law.

44.     According to the Red Oak Group Schedule 13D, on February 9, 2009, the same day of and following its announcement that it was abandoning its tender offer, the Red Oak Group purchased approximately 1.3 million shares of CLST common stock.  Upon information and belief, given the relatively illiquid market for the Company's stock, 1.4 million shares of the Company's stock could only have been purchased by the Red Oak Group in one day if it had utilized the stock list provided it in connection with the tender offer by the Company to illegally solicit the private sale of such stock.

45.     According to the Red Oak Group Schedule 13D, on February 10, 2009, only one day after the purported abandonment of its tender offer, the Red Oak Group purchased over 1.4 million shares of the Company's stock.  Upon information and belief, these stock purchases were also illegally made by the Red Oak Group through utilization of the stock list provided it in connection with the tender offer by the Company.

46.     Over the course of the next two days, the Red Oak Group continued its spending spree by purchasing 867,951 shares of the Company's stock.

47.     On or about February 12, 2009, the Red Oak Group contacted at least one of the Company's stockholders and aggressively offered to purchase CLST's stock from him.  A true and correct copy of the correspondence reflecting those communications is attached hereto as Exhibit F.  On information and belief, the Red Oak Group utilized the stock list provided it by the Company in connection with the tender offer to illegally make the solicitation.

48.     On February 13, 2009, the Red Oak Group purchased nearly 1.1 million additional shares of the Company's stock.  Again, on information and belief, such a transaction in an illiquid stock traded on the Pink Sheets would not have been possible without the illegal use of a stock list provided the Red Oak Group by the Company in connection with a tender offer that the Red Oak Group purportedly abandoned.

49.     On February 13, 2009, CLST filed the present action seeking injunctive and declaratory relief against the Red Oak Group.

50.     On February 18, 2009, the Red Oak Group filed its Schedule 13D indicating that it beneficially owns 4,561,554 shares of the Company's stock, representing 22.19% of all of CLST's outstanding stock.[10]   A true and correct copy of the Red Oak Group Schedule 13D is attached hereto as Exhibit G.

51.     The Red Oak Group Schedule 13D provides a chart summarizing the Red Oak Group's purchases of CLST's common stock within the sixty days before that filing, and that chart is reproduced here for convenience:

| Trade Date | Txn Type | Quantity | Unit Cost |
|---|---|---|---|
| **Pinnacle Fund LLLP** | | | |
| 1/15/2009 | Buy | 2,500 | 0.1500 |
| 2/2/2009 | Buy | 2,500 | 0.1450 |
| 2/3/2009 | Buy | 210,000 | 0.1100 |
| 2/9/2009 | Buy | 122,512 | 0.2297 |
| 2/9/2009 | Buy | 172,181 | 0.2300 |
| 2/10/2009 | Buy | 44,520 | 0.2300 |
| 2/11/2009 | Buy | 3,150 | 0.2300 |
| 2/12/2009 | Buy | 11,781 | 0.2300 |
| 2/12/2009 | Buy | 167,339 | 0.2400 |
| 2/13/2009 | Buy | 69,825 | 0.3237 |
| 2/13/2009 | Buy | 154,140 | 0.4000 |
| **Bear Market Opportunity Fund L.P.** | | | |
| 2/3/2009 | Buy | 65,000 | 0.1100 |
| 2/9/2009 | Buy | 195,000 | 0.2297 |

---

[10] This figure is based on the 20,553,205 shares outstanding of CLST's common stock, as reported in CLST's October 14, 2008 10-Q.

**PLAINTIFF'S FIRST AMENDED COMPLAINT
AND APPLICATION FOR INJUNCTIVE RELIEF** - Page 14

**Red Oak Fund, L.P.**

| Date | | Amount | Price |
|---|---|---|---|
| 1/15/2009 | Buy | 2,500 | 0.1500 |
| 1/28/2009 | Buy | 1,800 | 0.1800 |
| 2/2/2009 | Buy | 2,500 | 0.1450 |
| 2/3/2009 | Buy | 725,000 | 0.1100 |
| 2/9/2009 | Buy | 265,881 | 0.2297 |
| 2/9/2009 | Buy | 647,729 | 0.2300 |
| 2/10/2009 | Buy | 167,480 | 0.2300 |
| 2/11/2009 | Buy | 11,850 | 0.2300 |
| 2/12/2009 | Buy | 44,319 | 0.2300 |
| 2/12/2009 | Buy | 629,512 | 0.2400 |
| 2/13/2009 | Buy | 262,675 | 0.3237 |
| 2/13/2009 | Buy | 579,860 | 0.4000 |

52.     The Red Oak Group Schedule 13D contains false and misleading statements regarding the Red Oak Group's purpose in investing in the Company.  Despite having clearly adopted a strategy to take over the Company and force it to liquidate as quickly as possible, and having clearly acted in furtherance of that strategy by purchasing as much of the Company's stock as possible on the open market, initiating a tender offer, and illegally utilizing a stock list the Company provided in connection with that tender offer to acquire more stock than would be available on the open market, Item 4 of the Red Oak Group Schedule 13D states that the Red Oak Group purchased the Company's stock merely for "investment purposes."  That factually false and misleading statement omits any reference to the Red Oak Group's desire to exert influence on the Board and the Company's management through its stockholdings, obtain representation on the board, take control of CLST, and force the Company to liquidate despite the value that would be irretrievably destroyed by doing so.

53.     On March 2, 2009, the Red Oak Group commenced a derivative lawsuit (the "Derivative Action") against the Company's directors in state district court in Dallas County, Texas.  Among other things, the Derivative Action challenges the validity of the Transactions.  If successful, the Derivative Action would lead to the rescission of the Transactions, destroy the stockholder value created through the Transactions, and forfeit the stockholder value associated with the utilization of the NOLs.  The purpose of the Derivative Action is to provide the Board

with no choice but to liquidate the Company as quickly as possible.  The defendants in the Derivative Action believe the claims are without merit, will defend the Derivative Action vigorously, and believe that the Texas state court will immediately identify that the motivation of the Red Oak Group in the Derivative Action is not to benefit the Company but to destroy stockholder value for the purpose of enhancing the Red Oak Group's short-term liquidity in the current economic environment.  The Derivative Action remains pending, and the individual defendants' counsel contemplate the filing of a motion to dismiss the derivative complaint as factually and legally insufficient.

54.    On March 13, 2009, CLST announced that it scheduled its 2009 Annual Meeting of Stockholders (the "2009 Annual Meeting") for May 22, 2009 in Dallas, Texas.  The close of business on April 2, 2009 was fixed as the record date for the determination of stockholders entitled to receive notice of, and to vote at, the annual meeting or any adjournments or postponements thereof.  A true and correct copy of the Company's March 13, 2009 press release regarding its 2009 Annual Meeting is attached hereto as Exhibit H.

55.    On March 18, 2009, the Red Oak Group sent a request to CLST to inspect and copy CLST's books and records pursuant to Section 220 of the DGCL (the "Demand").  The Demand requested access to "[a]ll books, records, reports, memoranda and materials, including but not limited to board and committee minutes and analyses, and materials furnished to or prepared by or for any member of the Board of Directors, whether or not reflected in the Company's public filings, relating to: a) Stockholder nominations for election of directors [and] b) Classes of directors and their terms of office, including all discussion by the Company or Board related to amending the size of the Board from the period of January 1, 2007 to the

present" (collectively, the "Requested Documents").  A true and correct copy of the Demand is attached hereto as Exhibit I.

56.     Despite the incredible breadth of the Requested Documents, the stated purposes in the demand are very narrow: "(i) to review and understand RO Fund's rights and obligations relative to board representation, (ii) to assist RO Fund in determining whether to nominate persons for election as directors of the Company and (iii) to facilitate and inform discussions . . . with other stockholders about such matters."

57.     These stated purposes are obviously pretextual.  The Red Oak Group does not need the Requested Documents to determine its rights and obligations as a stockholder of the Company relative to board representation.  Those rights are described fully in the Company's Amended and Restated Certificate of Incorporation and the Company's Bylaws, both of which are publicly available and on file with the SEC.  Nor does the Red Oak Group require access to the Company's books and records to "determin[e] whether to nominate persons for election."  Additionally, as evidenced by the Red Oak Group's actions described below, before March 18, 2009, the Red Oak Group had already determined to nominate a slate of directors at the Company's 2009 Annual Meeting.

58.     The improper and narrow scope of the purposes stated in the Demand, the availability of public information sufficient to discharge those purposes, and the disproportionate breadth of the document requests set forth in the Demand indicate that the purposes stated in the Demand are pretextual and that the Red Oak Group's true purposes are to engage in a fishing expedition and/or to seek backdoor discovery related to the pending Derivative Action.

59.     On March 19, 2009, before the Company had any opportunity to respond to the Demand, the Red Oak Group delivered to the Company a notice of director nominations, which

disclosed the Red Oak Group's intention to nominate a slate of candidates for election to the Board at the 2009 Annual Meeting (the "Red Oak Group Notice of Director Nominations"). A true and correct copy of the Red Oak Group Notice of Director Nominations is attached hereto as Exhibit J.

60.     The Red Oak Group Notice of Director Nominations proposes the nomination of four individuals for director positions, despite the fact that the Company's public disclosures make clear that the Board consists only four directorships, that the Board is staggered into three classes of approximately equal size, and that only two director positions are subject to election at the 2009 Annual Meeting.

61.     The Red Oak Group Notice of Director Nominations does not explain the basis for the Red Oak Group's belief that there are four director positions subject to election at the 2009 Annual Meeting. This overstatement of the Red Oak Group's rights is wholly consistent with its ongoing strategy to raid the Company for its own short-term liquidity benefits at the expense of the Company and its other stockholders.

62.     Also on March 19, 2009, the Red Oak Group delivered to the Company its proposal for business at the 2009 Annual Meeting (the "Red Oak Group Notice of Business"), in which it disclosed its intent to propose and solicit stockholder approval, solely through Red Oak proxy materials, for five resolutions at the meeting (the "Red Oak Group Proposals"). A true and correct copy of the Red Oak Group Notice of Business is attached hereto as Exhibit K.

63.     The Red Oak Group Notice of Business describes the Red Oak Group Proposals as: (1) a "Vote for shareholder approval to proceed with the 2007 shareholder approved plan of dissolution. . . . ."; (2) "Vote for shareholder approval of the November 10, 2008 transaction whereby CLST Asset I LLC . . . entered into a purchase agreement to acquire all of the

outstanding equity interests of FCC Investment Trust I . . . ."; (3) "Vote for shareholder approval of the 2008 Long Term Incentive Plan. . . . ."; (4) "Vote for shareholder approval of the December 12, 2008 transaction whereby CLST Asset Trust II LLC . . . entered into a purchase agreement . . . to acquire . . . [certain receivables] . . . ."; and (5) "Vote for shareholder approval of the February 13, 2009 transaction whereby CLST Asset III, LLC . . . purchased certain receivables . . . and related assets owned by Fair Finance Company, which is partly owned by Timothy S. Durham . . . ."

64.     The Red Oak Group Proposals are deceptive and are not the proper subject of stockholder business pursuant to either federal or Delaware law.

65.     On March 25, 2009, the Company formally rejected the Demand as improper pursuant to Delaware law.

66.     On April 5, 2009, the Board decided to postpone the 2009 Annual Meeting presently scheduled for May 22, 2009 until September 25, 2009 unless the Red Oak Group has agreed to resolve to all issues that form the basis of this lawsuit by no later than April 12, 2009.

## COUNT 1

### (Violations of 13(d) of the Exchange Act and SEC Rules Promulgated Thereunder)

67.     CLST repeats the allegations of preceding paragraphs as if fully set forth herein.

68.     The Williams Act, which enacted what is now Section 13(d), was passed to address the increasing frequency with which hostile takeovers were being used to effect changes in corporate control. *CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 562 F.Supp.2d 511, 538-39 (S.D.N.Y. 2008).

69.     Section 13(d) of the Exchange Act in particular was adopted "to alert the marketplace to every large, rapid aggregation or accumulation of securities, regardless of technique employed, which might represent a potential shift in corporate control." *CSX Corp.*,

562 F.Supp.2d at 538.  Stated differently, "alert[ing] investors to potential changes in corporate control" is the interest that section 13(d) seeks to protect.  *Id.* at 570.

70.     Section 13(d)(1), in relevant part, provides:

Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is registered pursuant to section 78*l* of this title, . . .is directly or indirectly the beneficial owner of more than 5 per centum of such class shall, within ten days after such acquisition, send to the issuer of the security at its principal executive office, by registered or certified mail, send to each exchange where the security is traded, and file[ ] with the Commission, a statement containing such of the following information, and such additional information, as the Commission may by rules and regulations, prescribe as necessary or appropriate in the public interest or for the protection of investors—

(A) the background, and identity, . . .and the nature of such beneficial ownership by, such person and all other persons by whom or on whose behalf the purchases have been or are to be effected;

* * * * * *

(C) if the purpose of the purchases or prospective purchases is to acquire control of the business of the issuer of the securities, any plans or proposals which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate structure.

15 U.S.C. § 78m(d)(1).

71.     Under Section 13(d), a beneficial owner of greater than 5% of a class of any equity security is required to file an SEC disclosure, known as Schedule 13D, within ten days of acquiring that position, containing the information called for by Section 13(d)(1)(A)-(E). 15 U.S.C. § 78m(d)(1).

72.     Item 4 of a Schedule 13D filing requires a filer to disclose the "purpose" of the acquisition of the issuer's securities.  17 C.F.R. § 240.13d-101, Item 4.  A filer violates Section 13(d) if it fails to adequately disclose "an intent to obtain a board position and exert some level of management influence over the [the target's] operations."  *Chevron Corp. v. Pennzoil*, 974

F.2d 1156, 1161 (9th Cir. 1992).  Rule 13d-2(a), moreover, requires the filer to amended its Schedule 13D if a material change occurs in the facts set forth in a Schedule 13D.

73.     On February 18, 2009, the Red Oak Group filed the Red Oak Group Schedule 13D.  Item 4 of that instrument states that the Red Oak Group purchased Company stock merely for "investment purposes."  The Red Oak Schedule Group 13D is materially false and misleading in that it misstates and/or omits material information required to be disclosed by law, including without limitation, the Red Oak Group's Red Oak Group's desire to exert influence on the Board and the Company's management through its stockholdings, obtain representation on the Board, take control of CLST, and force the Company to liquidate despite the value that would be irretrievably destroyed by doing so.

74.     The Red Oak Group is obligated to correct its material misstatements and/or omissions so that CLST's stockholders have a full and accurate understanding of the Red Oak Group's actions and intentions as soon as possible.

75.     On March 19, 2009, the Red Oak Group delivered to the Company the Red Oak Group Notice of Director Nominations and its proposal for business at CLST's annual meeting. The Red Oak Group has failed to amend its Schedule 13D to reflect its director nominations or proposed business, which are omissions of material information required to be disclosed under Rule 13d-2(a), making its Schedule 13D materially false and misleading.

76.     The Red Oak Group is obligated to correct the foregoing material omissions so that CLST's stockholders have a full and accurate understanding of the Red Oak Group's actions and intentions as soon as possible.

77.     CLST, its stockholders, and the investing public have been, and will continue to be, irreparably harmed in the absence of the declaratory and equitable relief as prayed for herein

due to the Red Oak Group's illegal activities with respect to the Red Oak Group Schedule 13D and the likely influence the result of such illegal activities, including the voting of tainted shares, will have on the 2009 Annual Meeting, including potentially determining the composition of the Board and whether the Red Oak Group will destroy stockholder value through immediate liquidation. CLST has no adequate remedy at law.

### COUNT 2

**(Violations of Section 14(d) of the Exchange Act)**

78.    CLST repeats the allegations of preceding paragraphs as if fully set forth herein.

79.    Section 14(d) was enacted as part of the Williams Act. *Gas Natural v. E.ON AG*, 468 F.Supp.2d 595, 603-604 (S.D.N.Y. 2006). "The Williams Act regulates tender offers with the twin aims of, first, maintaining neutrality between bidders and target companies and, second, protecting target shareholders by requiring that bidders make certain disclosures." *Id.* (internal quotation omitted).

80.    Section 14(d)(1) requires those making a tender offer for certain regulated securities to disclose publicly information related to the tender offer. *E.ON AG*, 468 F.Supp.2d at 603-04; 17 C.F.R. § 78(n)(d)(1). That provision and its related rules prohibit any person from making a tender offer unless the person simultaneously files with the SEC and sends to the target company a statement now known as a Schedule TO. 17 C.F.R. § 240.14-100.

81.    Section 14(d)(1) states in relevant part:

It shall be unlawful for any person, directly or indirectly, by use of the mails or by any instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, *to make a tender offer for, or a request or invitation for tenders of,* any class of any equity security which is registered pursuant to section 78*l* of this title . . . , if, after consummation thereof, such person would, directly or indirectly, be the beneficial owner of more than 5 per centum of such class, *unless at the time* copies of the offer or request or invitation are first published or sent or given to security holders such person has *filed with*

*the Commission a statement containing such information specified in section 78m(d) of this title, and such additional information as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors.* All requests or invitations for tenders or advertisements making a tender offer or requesting or inviting tenders of such a security shall be filed as a part of such statement and shall contain such of the information contained in such statement as the Commission may by rules and regulations prescribe.

15 U.S.C. § 78(n)(d)(1) (emphasis added).

82.     Section 14(d)(1) further requires filers to provide "[c]opies of all statements, in the form in which such material is furnished to security holders and the Commission" directly to the issuer no later than the date the material is first published or sent or given to any security holder. *Id.*

83.     According to the Red Oak Group Schedule 13D, since January 15, 2009, the Red Oak Group has engaged in an aggressive purchasing campaign, rapidly accumulating 4,561,544 shares of CLST, representing 19.29% of all of CLST common stock.  The Red Oak Group's multiple private purchases on and after January 15, 2009 constitute an illegal tender offer given its failure to comply with section 14(d)'s filing and timing requirements.

84.     On February 3, 2009, the Red Oak Group announced that it would engage in a tender offer for up to 70% of the outstanding shares of CLST.  Although Red Oak purported to "abandon" its tender offer on February 9, 2009, its actions subsequent to the purported termination are wholly inconsistent with that stated intention and actually evidence the Red Oak Group's continued accumulation CLST shares without the restrictions imposed under Rule14e-5. Since that time, the Red Oak Group has continued to engage in an aggressive purchasing campaign, rapidly accumulating large amounts of Company stock.  The Red Oak Group's multiple private purchases on and after February 9, 2009 have operated as a continuation of its earlier illegal tender offer activities.

85.     The Red Oak Group has engaged in fraudulent, deceptive, and manipulative acts in connection with its tender offer by failing to abide by section 14(d)'s timing requirements and by failing to make the required filings with the SEC.

86.     The Red Oak Group is obligated to file all required filings and documents for the tender offer with the SEC so that CLST stockholders have a full and accurate understanding of the Red Oak Group's actions and intentions as soon as possible.

87.     CLST, its stockholders, and the investing public have been, and will continue to be, irreparably harmed in the absence of the declaratory and equitable relief as prayed for herein due to the Red Oak Group's illegal activities in violation of Section 14(d) and the likely influence the result of such illegal activities, including the voting of tainted shares, will have on the 2009 Annual Meeting, including potentially determining the composition of the Board and whether the Red Oak Group will destroy stockholder value through immediate liquidation. CLST has no adequate remedy at law.

## COUNT 3

### (Violations of Rule 14d-10)

88.     CLST repeats the allegations of preceding paragraphs as if fully set forth herein.

89.     Section 14(d)(7) of the Exchange Act provides: "Where any person varies the terms of a tender offer or request or invitation for tenders before the expiration thereof by increasing the consideration offered to holders of such securities, such person shall pay the increased consideration to each security holder whose securities are taken up and paid for pursuant to the tender offer or request or invitation for tenders whether or not such securities have been taken up by such person before the variation of the tender offer or request or invitation."

90.     In the same vein, Rule 14d-10 addresses equal treatment of security holders. Specifically, it provides that no bidder shall make a tender offer "unless the tender offer is open to all security holders of the class of securities subject to the tender offer"; and "the consideration paid to any security holder for securities tendered in the tender offer is the highest consideration paid to any other security holder for securities tendered in the tender offer."

91.     If the buyer terminates a tender offer, and then carries out private or negotiated purchases of the target's stock at different considerations, the buyer violates "all holders/best price rules" set forth in Section 14(d)(7) and Rule 14d-10.

92.     The Red Oak Group has violated the "all holders/best price rule" by purchasing shares pursuant to its tender offer at differing prices since January 15, 2009.

93.     CLST, its stockholders, and the investing public have been, and will continue to be, irreparably harmed in the absence of the declaratory and equitable relief as prayed for herein due to the Red Oak Group's illegal activities with respect to its tender offer and the likely influence the result of such illegal activities, including the voting of tainted shares, will have on the 2009 Annual Meeting, including potentially determining the composition of the Board and whether the Red Oak Group will destroy stockholder value through immediate liquidation. CLST has no adequate remedy at law.

## COUNT 4

### (Violations of Rule 14d-5(f))

94.     CLST repeats the allegations of preceding paragraphs as if fully set forth herein.

95.     Rule 14d-5(f) addresses the dissemination of certain tender offers by the use of stockholder lists and security position listings. The Rule requires a subject company either to mail a bidder's tender offer materials to its stockholders or to provide that bidder with a stockholder list to enable the offeror to send to the tender offer materials itself.

96.     If a subject company has decided to provide the bidder with a stockholder list, 14d-5(f) requires that the bidder use the stockholder list exclusively in the dissemination of tender offer materials to security holders in connection with the bidder's tender offer.   Rule 14d-5(f) also requires the bidder to return the stockholder list promptly after the termination of the bidder's tender offer.   The rule requires the bidder to accept, handle, and return the stockholder list on a confidential basis, and prevents a bidder from retaining the stockholder list, or any information derived from such list, after the termination of the bidder's tender offer.

97.     Despite its February 9, 2009 announcement that it was "abandoning" its plans to commence a tender offer, Red Oak Partners failed to return to CLST its stockholder list or security position listing until February 18, 2009.

98.     Upon information and belief, the Red Oak Group violated Rule 14d-5(f) by using CLST's stockholder list for a purpose other than in connection with the dissemination of tender offer materials, by failing to return the stockholder list to CLST promptly after "abandoning" its tender offer, and by failing to accept, handle, or return the stockholder list to CLST on a confidential basis.

99.     Upon information and belief, the Red Oak Group has used CLST's stockholder list to contact its stockholders.  CLST has learned from certain stockholders that the Red Oak Group has contacted them and attempted to purchase their shares.

100.     CLST, its stockholders, and the investing public have been, and will continue to be, irreparably harmed in the absence of the declaratory and equitable relief as prayed for herein due to the Red Oak Group's illegal utilization of the stock list provided it by the Company and the likely influence the result of such illegal activities, including the voting of tainted shares, will have on the 2009 Annual Meeting, including potentially determining the composition of the

Board and whether the Red Oak Group will destroy stockholder value through immediate liquidation.  CLST has no adequate remedy at law.

## COUNT 5

### (Violations Section 14(e) and SEC Rules Promulgated Thereunder)

101.    CLST repeats the allegations of preceding paragraphs as if fully set forth herein.

102.    Section 14(e) "is a broad antifraud provision aimed specifically at tender offers for securities."  *Telenor East Invest AS*, 567 F.Supp.2d at 443.  Largely modeled after section 10(b), it prohibits material misstatements, omissions, and fraudulent practices in connection with a tender offer.  *Id.*

103.    Section 14(e) provides, in relevant part, that: "It shall be unlawful for any person to make any untrue statement of material fact or omit to state any material fact necessary in order to make the statement made, in light of the deceptive circumstances in which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with a tender offer."

104.    Rule 14e-5 prohibits a tender offeror and related persons from purchasing securities of the target company after a public announcement of a tender offer.  17 C.F.R. § 240.14e-5.  Rule 14e-5(a) provides, in relevant part, that: "As a means reasonably designed to prevent fraudulent, deceptive or manipulative acts or practices in connection with a tender offer for equity securities, no covered person may directly or indirectly purchase or arrange to purchase any subject securities or any related securities except as part of the tender offer.  This prohibition applies from the time of public announcement of the tender offer until the tender offer expires."

105.    Red Oak Partner's February 3, 2009 announcement triggered Rule 14e-5's requirements, as that public announcement was a written communication by the offeror,

reasonably designed to, or having the effect of, informing the public or security holders in general about the tender offer.

106.    Although the Red Oak Group purported to "abandon" its tender offer, its actions subsequent to the purported termination are inconsistent with that stated intention and actually evidence Red Oak's continued accumulation CLST shares without the restrictions imposed under Rule14e-5.

107.    The Red Oak Group violated Rule 14e-5 by, directly or indirectly, purchasing or arranging to purchase CLST shares not in connection with its tender offer and without complying with the procedural, disclosure, and anti-fraud requirements applicable to tender offers regulated under Regulation 14D.

108.    CLST, its stockholders, and the investing public have been, and will continue to be, irreparably harmed in the absence of the declaratory and equitable relief as prayed for herein due to the Red Oak Group's illegal misrepresentations regarding its tender offer and the likely influence the result of such illegal activities, including the voting of tainted shares, will have on the 2009 Annual Meeting, including potentially determining the composition of the Board and whether the Red Oak Group will destroy stockholder value through immediate liquidation. CLST has no adequate remedy at law.

## COUNT 6

### (Violations of Section 14(a) of the Exchange Act and SEC Rules Promulgated Thereunder)

109.    CLST repeats the allegations of preceding paragraphs as if fully set forth herein.

110.    Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder govern the solicitation of the Company's proxies at the 2009 Annual Meeting.

111.   Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder demand full and fair disclosure in proxy solicitations and were enacted to prevent anyone from obtaining authorization for corporate action by means of inadequate or misleading disclosures.

112.   Section 14(a) makes it unlawful to solicit proxies "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."   15 U.S.C. § 78n(a).   Rule 14a-9 prohibits the solicitation of proxies "containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a).

113.   On March 19, 2009, the Red Oak Group delivered to the Company the Red Oak Group Director Nomination and the Red Oak Group Notice of Business, as well as its intent to deliver a proxy statement to the holders of at least the percentage of common stock required to elect its nominees.   Any attempt by the Red Oak Group to solicit proxies from CLST stockholders with respect to the Red Oak Group Director Nomination or the Red Oak Group Notice of Business will be misleading in light of the Red Oak Group's illegal activities in accumulating Company stock.   Further, the Red Oak Group's proposals are per se deceptive in that they are worded so as to put prior corporate actions to an up or down vote.   Under Section 141 of the Delaware Code, corporate actions may only be taken by the corporation's board of directors.   Accordingly, the Red Oak Group's solicitation of proxies regarding the approval or disapproval of the Transactions is in violation of Delaware law.

114.     CLST, its stockholders, and the investing public have been, and will continue to be, irreparably harmed in the absence of the declaratory and equitable relief as prayed for herein due to the likely influence the result of the Red Oak Group's illegal activities, including the voting of tainted shares, will have on the 2009 Annual Meeting, including potentially determining the composition of the Board and whether the Red Oak Group will destroy stockholder value through immediate liquidation.  CLST has no adequate remedy at law.

## COUNT 7

### (Declaratory Judgment and Injunctive Relief under the Charter and Delaware Law)

115.     CLST repeats the allegations of preceding paragraphs as if fully set forth herein.

116.     Declaratory relief is appropriate because an actual, justiciable controversy exists regarding the validity of the Red Oak Group Proposals.

117.     The Red Oak Group Proposals do not constitute "proper business" because they are deceptive, have no basis pursuant to Delaware law, and because they fall outside the scope of Rule 14a-8, have no basis under federal law.

118.     The Red Oak Group's dissemination or distribution of the Red Oak Group Proposals would constitute a violation of the Charter and Delaware law.

119.     CLST, its stockholders, and the investing public have been, and will continue to be, irreparably harmed in the absence of the declaratory and equitable relief as prayed for herein due to the deceptive and misleading character of the Red Oak Group Proposals, the and the influence the Red Oak Group Proposals will have on the 2009 Annual Meeting, including misleading the Company's stockholders regarding the Board's and Company's stockholders rights and obligations with respect to the Red Oak Group's plan to immediately liquidate the

Company for the benefit of its own short-term liquidity without regard for the value destruction such action would cause.  CLST has no adequate remedy at law.

## COUNT 8

### (Declaratory Judgment under 8 Del. C. Section 211)

120.    CLST repeats the allegations of preceding paragraphs as if fully set forth herein.

121.    Declaratory relief is appropriate because an actual, justiciable controversy exists regarding the validity of the Board's decision to postpone the 2009 Annual Meeting.

122.    Section 211(c) of the DGCL permits the Court to order the Company to schedule an annual meeting of its stockholders if it has not held such a meeting in the preceding 13 months.

123.    The Board has decided to postpone the 2009 Annual Meeting presently scheduled for May 22, 2009 until September 25, 2009 unless the Red Oak Group has agreed to resolve to all issues that form the basis of this lawsuit by April 12, 2009.

124.    The 2009 Annual Meeting, if held on September 25, 2009, is consistent with and in full satisfaction of the Company's obligations pursuant to Section 211 of the DGCL.

## COUNT 9

### (Declaratory Judgment – Compliance with Fiduciary Duties)

125.    CLST repeats the allegations of preceding paragraphs as if fully set forth herein.

126.    Declaratory relief is appropriate because an actual, justiciable controversy exists regarding the whether CLST's decision to hold the 2009 Annual Meeting on September 25, 2009 is consistent with the Board's fiduciary obligations to the Company and its stockholders.

127.    The Board's decision to postpone the 2009 Annual Meeting and reset the record date does not constitute a breach of fiduciary duty.

## COUNT 10

### (Declaratory Judgment – Number of Board Seats)

128.     CLST repeats the allegations of preceding paragraphs as if fully set forth herein.

129.     Declaratory relief is appropriate because an actual, justiciable controversy exists regarding the whether the director positions subject to election at the 2009 Annual Meeting include only one Class I director and one Class II director, or whether four director positions are subject to election.

130.     The Board consists of only four directorships.

131.     The Board is staggered into three classes, and there currently exists one Class I director position, one Class II director position and two Class III director positions.  The Class I director position would have been subject to election at the 2008 annual meeting of stockholders and will be subject to election at the 2009 Annual Meeting.  The Class II director position will be subject to election at the 2009 Annual Meeting.  The Class III director positions will not be subject to election at the 2009 Annual Meeting.

132.     The Red Oak Group has no statutory, common law, or contractual authority to unilaterally expand the Board or require that all four of the directorships on the Company's board be subject to election in a single year.

### REQUEST FOR PRELIMINARY INJUNCTION

133.     CLST repeats the allegations of preceding paragraphs as if fully set forth herein.

134.     CLST, its stockholders, and the investing public will suffer irreparable injury if the Red Oak Group is not enjoined from further violations of Section 13(d) of the Exchange Act.

135.    CLST, its stockholders, and the investing public will suffer irreparable injury if the Red Oak Group is allowed to exercise its rights as a stockholder, including its right to vote its illegally obtained shares or proxies resulting from the acquisition of its illegally obtained shares.

136.    CLST, its stockholders, and the investing public will also suffer irreparable injury if the Red Oak Group is not enjoined from continuing to purchase, either directly or indirectly through its agents or affiliates, CLST shares without complying with the procedural, disclosure, and anti-fraud provisions applicable to tender offers.

137.    CLST, its stockholders, and the investing public will also suffer irreparable injury if the Red Oak Group is not enjoined from using information derived from CLST's stockholder list to contact CLST's stockholders.

138.    CLST, its stockholders, and the investing public will also suffer irreparable injury if the Red Oak Group is not enjoined from disseminating the Red Oak Group Proposals to the Company's stockholders in connection with the 2009 Annual Meeting.

139.    CLST's injury is irreparable because the Red Oak Group stands to obtain influence over CLST's management, including Board positions, by virtue of the voting its tainted shares.

140.    CLST's injury is imminent because it has scheduled its 2009 Annual Meeting for May 22, 2009, the Red Oak Group has delivered to the Company its intention to nominate a slate of candidates for election to CLST's Board and its notice of proposed business, and the Red Oak Group's misconduct will taint the results of the election and any vote held on its proposed business.

141.    There is no adequate remedy at law because the Red Oak Group stands to obtain influence over CLST's management, including Board positions, by virtue of the voting of its illegally obtained shares.

142.    There is a substantial likelihood of success on the merits because CLST will be able to prove that the Red Oak Group has failed to make the required disclosures under Sections 13(d) and 14(d) and has engaged in a hostile, illegal tender offer that violates the Exchange Act, the SEC rules promulgated thereunder, and Delaware law.

143.    The harm faced by CLST outweighs the harm that would be sustained by the Red Oak Group if the preliminary injunction was granted because, if the Red Oak Group is allowed to proceed with its aggressive and illegal takeover strategy, the result of such illegal activities will be to influence the 2009 Annual Meeting by misleading the Company's stockholders and, through the illegal vote of the Red Oak Group's tainted shares, potentially determine the composition of the Board and allow the Red Oak Group to irretrievably destroy stockholder value through immediate liquidation.

144.    Issuance of a preliminary injunction would not adversely affect the public interest because CLST seeks to enforce the very securities laws enacted to protect the investing public, resolve all outstanding issues in advance of the 2009 Annual Meeting, and ensure that all information pertinent to the 2009 Annual Meeting, including the director elections and business decisions implied thereby, is made publicly available sufficiently in advance of the 2009 Annual Meeting.

145.    CLST is willing to post a bond in the amount the Court deems appropriate.

146.     CLST asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against the Red Oak Group.

147.     As a consequence of the foregoing, CLST seeks preliminary injunctive relief prohibiting the Red Oak Group, its principals and affiliates, and anyone acting in concert with them, from:

(a)     purchasing, acquiring, or otherwise coming into actual or constructive possession of CLST securities;

(b)     making offers to purchase, soliciting, or otherwise evidencing the ability or willingness to purchase CLST securities;

(c)     making any untrue statements regarding their intentions towards CLST, including any untrue or misleading statements in filings required by federal securities laws;

(d)     taking any steps in furtherance of the day-to-day management of CLST, including but not limited to, making stockholder proposals and nominating candidates for election as directors of the Company;

(e)     exercising its rights as a stockholder, including its right to vote, with respect to all CLST shares illegally acquired in the course of its illegal tender offer and will respect to all proxies or rights granted by others or obtained through the result of its illegal activities;

(f)     contacting other CLST stockholders regarding the purchase of their shares or any proposed business relating to CLST's annual stockholders' meeting; and

(g)     taking any further action to increase its influence on CLST's corporate governance.

## REQUEST FOR PERMANENT INJUNCTION

148.    CLST asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against the Red Oak Group.

## PRAYER FOR RELIEF

WHEREFORE, CLST prays for relief in the form of an order:

(a)    Declaring that the Red Oak Group failed to comply with Sections 13(d), 14(a), 14(d), and 14(e) of the Exchange Act and the SEC rules and regulations promulgated thereunder;

(b)    Declaring that the Red Oak Group has failed to comply with Rules 14d-5(f), 14d-10, and 14e-5;

(c)    Enjoining the Red Oak Group from violating Rule 14d-5(f) by using CLST's stockholder list, or information gained therefrom, to contact CLST's stockholders;

(d)    Enjoining the Red Oak Group from violating Rule 14e-5 by continuing to purchase, either directly or indirectly, CLST shares;

(e)    Enjoining the Red Oak Group from further violating Section 13(d) of the Exchange Act;

(f)    Ordering the Red Oak Group to correct by appropriate public means its material misstatements and omissions, including by filing complete and accurate disclosures with the SEC as required by Sections 13(d)  and 14(d) of the Exchange Act;

(g)    Enjoining the Red Oak Group from voting any and all shares acquired in violation of Sections 13(d), 14(d), or 14(e) of the Exchange Act;

(h)    Enjoining the Red Oak Group from voting any proxies procured as a result of its violation of Sections 14(d), 14(e), or 14(a) of the Exchange Act;

(i)      Ordering the Red Oak Group to offer withdrawal rights to CLST stockholders from whom they purchased shares in its unlawful tender offer or to dispose of such shares to unaffiliated third parties;

(j)      Declaring that the Red Oak Group Proposals are not proper subjects of stockholder business at the 2009 Annual Meeting;

(k)      Enjoining the Red Oak Group from disseminating or distributing the Red Oak Group Proposals in connection with the 2009 Annual Meeting;

(l)      Declaring that the 2009 Annual Meeting, as currently scheduled on May 22, 2009 (or September 25, 2009 unless the Red Oak Group has agreed to resolve to all issues that form the basis of this lawsuit by no later than April 12, 2009), discharges the Company's obligations pursuant to Section 211 of the DGCL;

(m)      Declaring that the Board's decision to postpone the 2009 Annual Meeting and reset the record date was consistent with its fiduciary duties and not in breach of any of them;

(n)      Declaring that at the 2009 Annual Meeting only two director positions are subject to election, the sole Class I director position and the sole Class II director position;

(o)      Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone:   (214) 953-6000
Facsimile:    (214) 953-5822


By:   /s/ Mark T. Josephs
     Mark T. Josephs
     State Bar No. 11031400
     Andrew D. Graham
     State Bar No. 24041002

**ATTORNEYS FOR CLST HOLDINGS, INC.**


## <u>CERTIFICATE OF SERVICE</u>

Defendants have not yet appeared through counsel of record.  Plaintiff has sent a copy of this document to the following in compliance with the Defendants' wishes.

Mr. Jay Gandhi                                    Mr. David L. Swanson
Paul, Hastings, Janofsky & Walker, LLP            Locke Lord Bissell & Liddell LLP
695 Town Center Drive                             2200 Ross Avenue, Suite 2200
Seventeenth Floor                                 Dallas, Texas  75201
Costa Mesa, CA 92626


Certified this 6th day of April 2009.


      /s/ Mark T. Josephs
      Mark T. Josephs