IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLST HOLDINGS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3-09CV00291-P |
| | § | |
| RED OAK PARTNERS, LLC; | § | |
| RED OAK FUND, L.P.; | § | |
| PINNACLE PARTNERS, LLC; | § | |
| PINNACLE FUND LLLP; | § | |
| BEAR MARKET OPPORTUNITY | § | |
| FUND, L.P.; and | § | |
| DAVID SANDBERG, | § | |
| | § | |
| Defendants. | § | |

### DEFENDANTS' COMBINED MOTION FOR LEAVE TO AMEND, TO JOIN THIRD PARTIES, TO VACATE THE SCHEDULING ORDER AND TO CONTINUE THE TRIAL DATE

Defendants (collectively "Red Oak") respectfully request (1) leave to amend the pleadings to add counterclaims and certain third-party claims, which are attached hereto as Exhibit A, (2) a continuance of the April 2010 trial in this action, and (3) an order vacating the scheduling order in order to extend the discovery deadline in light of the additional claims and new parties. In support, defendants state as follows:

### CERTIFICATION

Undersigned counsel has conferred with counsel for CLST, who opposes this motion.

### BACKGROUND

CLST filed its original complaint in this Court on February 13, 2009. CLST alleged that Red Oak violated certain reporting regulations promulgated by the Securities and Exchange

Commission.  CLST never served its original complaint on any defendant.  Moreover, although CLST's original complaint sought a temporary restraining order, CLST twice postponed a hearing on its own TRO motion.  No such hearing was ever held.

On March 9, 2009, Red Oak filed a derivative suit against CLST in Texas state court in Dallas ("the State Court Action").  Red Oak's shareholder derivative petition in the State Court Action alleged that CLST's entrenched officers and directors violated their common law fiduciary duties through numerous overt self-dealing transactions and that CLST wasted company assets in those self-dealing transactions.  By March 9, therefore, it was clear that Red Oak (which owns more than 20% of CLST stock) would challenge the actions of CLST's self-dealing management.

CLST has not held an annual meeting since July 2007.  Delaware Code §211(c) requires an annual meeting be held at least every thirteen months.  CLST announced in March 2009 that an annual meeting would he held in May 2009 – nearly a year late and almost two years since the last meeting was held.  Red Oak informed CLST that it would submit nominees for the open board seats to be filled at the May 2009 annual meeting and would submit business proposals for shareholder consideration.  In response, CLST *further* postponed the annual meeting that was already nearly a full year overdue.  In addition, CLST dusted off its never-served, two-month-old complaint in this case, served the defendants, and requested a preliminary injunction sterilizing Red Oak's shares so that CLST's entrenched management could preserve their positions within the company.

By order dated October 13, 2009, this Court denied in full CLST's motion to enjoin Red Oak from voting its shares.  Unable to prevent Red Oak from so voting, CLST and its entrenched

managers (Timothy Durham, Robert Kaiser, and David Tornek) pursued other steps to maintain

their entrenchment. These steps included the following:

(1)     A continued refusal to hold an annual meeting. CLST *still* has not held an annual
        meeting since July 2007, *two and a half years ago.*

(2)     Durham, Kaiser, and Tornek acted in concert as an undisclosed group with several
        other people in various attempts to acquire more CLST stock before an annual
        meeting can be held. To defendants' knowledge, these concerted efforts to
        develop a larger voting block occurred mainly in September and October 2009.

(3)     Systematic misrepresentations in preliminary proxy statements and other public
        disclosures designed to hide Timothy Durham's manipulation of CLST to support
        a Ponzi scheme orchestrated by Durham and recently revealed by the U.S.
        Attorney for Indiana. CLST and its entrenched managers hid Durham's Ponzi
        scheme for fear that shareholders would vote for Red Oak's nominees if and when
        an annual meeting is ever held. The torrent of publicity and disclosures about
        Durham's fraudulent activity began only in late 2009.

Meanwhile, the State Court Action has seen substantial activity but little progress.

CLST's continued refusal to hold an annual meeting is still the subject of direct claims by Red

Oak in the State Court Action. As to derivative claims, the state court judge ruled that Red Oak,

apparently due to its adversarial posture in the proxy fight, may not represent CLST shareholders

in derivative claims, but left the door open for other shareholders to intervene to pursue the

derivative claims. It is anticipated that other shareholders will intervene shortly, particularly

after the recent disclosures of Durham's Ponzi scheme and the multi-pronged investigation of

Durham by the FBI, Department of Justice, SEC, and Ohio state regulators.

Specifically, in late October 2009, the Indiana Business Journal revealed that the

Durham-controlled Fair Finance had used most of the $200 million it had raised through the sale

of "investment certificates" for self-dealing loans from Fair Finance to various other entities

3

controlled by Durham. The IBJ questioned whether Fair Finance had any realistic chance of paying back those who had purchased its securities.

Instead of paying back its investors or demanding payment of the self-dealing loans it made to other Durham companies, Fair Finance in November 2009 sought permission from the State of Ohio to sell even more investment certificates. Last month Ohio regulators rejected the request by Durham's Fair Finance to raise more money.

On November 24, 2009, the Federal Bureau of Investigation executed search warrants at the offices of Fair Finance and Obsidian Development, another Durham-controlled company. The FBI questioned Durham directly on or about the same day.

Also on November 24, 2009, the United States Attorney for the Southern District of Indiana filed a civil complaint seeking seizure of assets held by Fair Finance and other Durham-controlled affiliates. **The U. S. Attorney alleged that Durham has operated a Ponzi scheme through Fair Finance's "investment certificates."** The complaint to seize assets was dismissed voluntarily only after Durham and his companies provided the U.S. Attorney adequate assurance that the assets identified would not be dissipated or diverted.

Also on November 24, 2009, CLST received a subpoena from the Securities and Exchange Commission seeking documents relating to Durham, Kaiser, Tornek, Fair Finance, and others. Durham, Kaiser, and Tornek also received individual subpoenas from the SEC. Thus, the SEC is conducting an investigation of Durham/Fair Finance and obviously is coordinating that investigation with the FBI and the U.S. Attorney's office. Upon information and belief, the SEC is investigating certain transactions between CLST and Durham affiliates that were

arranged by Durham, and the extent to which those transactions raided CLST of cash in order to prop up Durham's Ponzi scheme with Fair Finance.

Barely a week later, on December 4, 2009, a class action was filed against Fair Finance, Durham, and others in Ohio seeking to rescind the sales of investment certificates used to fund Durham's Ponzi scheme and seeking millions in damages from Durham and others.

## I.     Good cause exists to grant defendants leave to amend the pleadings.

Defendants respectfully request leave to amend their pleadings to assert counterclaims against CLST and third-party claims against CLST's entrenched managers – Timothy Durham, Robert Kaiser, and David Tornek. Defendants wish to assert claims under Section 13(d) and 14(a) of the Securities Exchange Act for these parties' undisclosed formation of a group and for multiple misrepresentations in various proxy statements. In addition, Red Oak has learned facts previously concealed by CLST that raises a strong claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934.

### Disclosure Violations.

Pursuant to this Court's Scheduling Order, the deadline to amend the pleadings and join other parties was July 1, 2009. The recent disclosures that compel defendants to amend their pleadings, however, occurred well after that date, and include the following:

1)   Kaiser and Tornek purchased additional CLST stock, during a "quiet period" in which they possessed material nonpublic information about CLST and during which they – as insiders – could not trade, in late September 2009. Counterclaims ¶¶29-30.

2)   Kaiser solicited more CLST stock on behalf of the undisclosed group of shareholders who opposed Red Oak's initiatives ("the Durham Group") in September and October 2009. Counterclaims ¶36.

3)   The FBI's raid of Durham's companies, the Department of Justice's suit to seize Durham's assets, the Department of Justice's disclosure of Durham's Ponzi scheme, and the SEC's service of investigatory subpoenas on CLST, Durham, Kaiser, and Tornek occurred in November 2009. Counterclaims ¶¶48-50.

4)   The civil class action suit against Durham relating to the Ponzi scheme was filed in December 2009. Counterclaims ¶51.

5)   At Durham's urging, CLST acquired $41 million of consumer receivables that originated from Durham's Fair Finance Company. The lender declared CLST to be in default in that transaction in October 2009. Counterclaims ¶39-44.

6)   At Durham's urging, CLST acquired millions more of consumer receivables that originated from Durham's Fair Finance Company in a second transaction that involved further undisclosed self-dealing by Durham. The lender declared CLST to be in default in that transaction in December 2009. Counterclaims ¶40-45.

Red Oak believes the SEC investigation of CLST must relate to Durham's Ponzi scheme and the extent to which he used CLST cash to fund his Ponzi scheme. Similarly, Red Oak believes Durham thrust the disastrous consumer receivables transactions upon CLST in order to obtain cash to fund his Ponzi scheme  Shareholders are entitled to full and accurate disclosure on these issues, as requested in Red Oak's proposed counterclaims and third-party claims.

Red Oak lacked information about these activities prior to the existing deadline for amending the pleadings. Indeed, most of the events that trigger the need for corrective disclosure occurred after the July 1, 2009 deadline. Accordingly, although this motion to amend is filed several months after the existing deadline for amending the pleadings, this motion is not the result of undue delay or dilatory motive by the Defendants. *See Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 608 (5th Cir. 1998).

**Securities Fraud**

As described in the proposed counterclaims, Red Oak purchased all of its roughly 20% of CLST's common stock in January-February 2008, immediately after Durham had compelled CLST to enter into an enormous (by CLST standards) $41 million purchase of consumer receivables from a supposedly unrelated, arms-length third party. CLST announced the transaction publicly in November 2008, but said nothing about Durham's Ponzi scheme through Fair Finance and his need to drain CLST of its available cash in order to stave off the collapse of his Ponzi scheme. Red Oak even spoke personally to Robert Kaiser, CLST's then-president and Chairman, who lauded the transaction and concealed its role in Durham's Ponzi scheme. CLST recently disclosed, however, that the transaction (and other CLST purchases arranged by Durham) are *already* in default and CLST is at risk of losing its entire investment therein.

CLST's fraudulent misrepresentations and omissions to Red Oak regarding these transactions were classic securities fraud. Facts regarding Durham's Ponzi scheme, the authorities' intense crackdown on Durham, the declared defaults of the consumer receivables portfolios, and related facts have only come to light in the last month or so. Thus, Red Oak seeks to amend its pleadings to assert a single claim for securities fraud under the Securities Exchange Act of 1934.

**II.     Good cause exists to continue the trial date and to vacate the scheduling order.**

At present, trial is set for April 19, 2010, and the discovery deadline of December 15, 2009, has passed. In conjunction with amending the pleadings to assert counterclaims and third-party claims, Red Oak requests that the trial be continued and the scheduling order be vacated.

7

The addition of new parties and new claims can then be addressed in a new scheduling order after Durham, Kaiser, and Tornek have appeared in this case.

## CONCLUSION

WHEREFORE, for the foregoing reasons, defendants respectfully request (1) leave to file the counterclaims and third-party claims attached as Exhibit A, (2) an order continuing the trial until a date to be determined, and (3) an order vacating the Scheduling Order and requiring a new Scheduling Order to be developed after the individual third-party defendants have appeared.

Dated:  January 20, 2010.

Respectfully submitted,

**SANDER INGEBRETSEN & WAKE, P.C.**
*Original Signature on File*

s/Daniel F. Wake
Daniel F. Wake
1660 17th Street, Suite 450
Denver, Colorado  80202
Telephone: (303) 285-5544
Facsimile: (303) 285-5301
Email: dwake@siwlegal.com

**SULLIVAN & COOK. LLC**
Frank P. Skipper
Texas State Bar No. 18471200
2301 Cedar Springs Road, Suite 200
Dallas, TX  75201
Telephone:  (214) 520-7494
Facsimile:  (214) 528-6925
Email:  fskipper@sillivancook.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January 2010, I served the foregoing **DEFENDANTS' COMBINED MOTION FOR LEAVE TO AMEND, TO JOIN THIRD PARTIES, TO VACATE THE SCHEDULING ORDER AND TO CONTINUE THE TRIAL DATE** via Electronic Filing to the following:

> Mark T. Josephs
> Andrew D. Graham
> Jackson Walker L.L.P.
> 901 Main Street, Suite 6000
> Dallas, TX  75202

*Original Signature on File*

s/ Patty Bates